UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GLYNICE SIMMONS, individually and as Administratrix
of the Estate of DAINELL ERIK SIMMONS,

                                Plaintiffs,

              -against-

THE COUNTY OF SUFFOLK AND SUFFOLK
COUNTY POLICE DEPARTMENT, POLICE
OFFICERS "JOHN DOE" 1-10 individually and officially
as members of the Suffolk County Police Department,
MARYHAVEN CENTER OF HOPE FOR MENTALLY
CHALLENGED INDIVIDUALS, and EMPLOYEES
"JOHN DOE" 1-10,

                                Defendants.
--------------------------------------------------------------------X

**SECOND AMENDED
COMPLAINT**

Jury Trial Demand

**Index No.:
14-cv-3884 (JS)(ARL)**

      PLAINTIFF, GLYNICE SIMMONS, as Administratrix of the Estate of DAINELL ERIK

SIMMONS (hereinafter referred to as "PLAINTIFFS"), by and through his attorneys, the law

offices of CRONIN & BYCZEK, LLP, as and for his Second Amended Complaint against

DEFENDANTS, respectfully sets forth the following:

<u>**NATURE OF ACTION**</u>

1.    PLAINTIFFS bring this action against the DEFENDANTS, THE COUNTY OF

      SUFFOLK and the SUFFOLK COUNTY POLICE DEPARTMENT, POLICE OFFICERS

      "JOHN DOE" 1-10, MARYHAVEN CENTER OF HOPE FOR MENTALLY

      CHALLENGED INDIVIDUALS, and EMPLOYEES "JOHN DOE" 1-10, for false arrest,

      false imprisonment, excessive force, negligence, negligent training, hiring, retention and

      supervision, personal injury, assault, battery, failure to render medical aid, abuse of

      process, civil conspiracy, invasion of privacy and violations of PLAINTIFFS' civil rights

      pursuant to the Federal and New York State Constitutions and law, to be free from racial

profiling, intentional infliction of emotional distress, willful and intentional interference with PLAINTIFFS' right of free speech, negligent infliction of emotional distress and all right under the Federal and State Constitutions, under the First, Fourth, Fifth and Fourteenth Amendments. Specifically, PLAINTIFFS assert a claim under 42 U.S.C. §§ 1981, 1983 and 1986, in addition to state law claims.

2.  It is further alleged that the DEFENDANT COUNTY OF SUFFOLK failed to adopt adequate policies and procedures to safeguard persons with special needs including Autism with whom police officers would likely come in contact.  As a result of the failure to adopt adequate policies as aforesaid, said DEFENDANT failed to train or supervise its officers in properly responding to incidents involving persons with special needs including Autism.  The failure to adopt such policies and/or the inadequacy of the policies that were adopted was likely to result in constitutional deprivations. Moreover, the failure to adopt adequate policies, and to train or supervise its police officers in how to properly handle situations involving emotionally disturbed persons, evidenced the COUNTY OF SUFFOLK's deliberate indifference to the constitutional rights of DAINELL ERIK SIMMONS, and resulted in the deprivation of his rights and wrongful death.

3.  As a remedy for the constitutional violations alleged herein, PLAINTIFFS seek damages for severe emotional and psychological distress, loss of consortium, and loss of companionship, pain and suffering and wrongful death all due to the actions and/or negligence of agents or employees of the COUNTY OF SUFFOLK.

4.  In addition, PLAINTIFFS seek an injunction requiring the COUNTY OF SUFFOLK to institute and implement effective policies and procedures with respect to police responses to situations involving personas with special needs including Autism and to adopt the

Crisis Intervention Team model, a collaborative program involving mental health professionals, or a similar program for responding to persons with special needs including Autism.

5.  It is further alleged that MARYHAVEN failed to institute a specialized "individual education plan" and a "behavior plan", as required. Moreover, MARYHAVEN even failed to adhere to past-precedents where if DAINELL SIMMONS was uncooperative, the staff had been instructed to involve his mother, GLYNICE SIMMONS, by telephone so that she could speak to her son directly and no further intervention was necessary. On July 24, 2013, the staff at "MARYHAVEN" deliberately and/or negligently failed to adhere to the aforesaid protocol that had been in existence for a number of years and the personnel on duty that evening unjustifiably made a 911 call with inaccurate statements about DAINELL SIMMONS and his behavior. This caused the SUFFOLK COUNTY POLICE, when they arrived at "MARYHAVEN", to arrest DAINELL SIMMONS and as a result the staff violated the duty of care allegedly subscribed to by "MARYHAVEN" in the proper use of crisis intervention to de-escalate the situation. "MARYHAVEN" failed to "match the level of dangerousness", failed to utilize "self-control plans", and either failed to have an IEP or failed to act upon it.

6.  Likewise, it is alleged that the employees on duty were not professional, licensed, certified (recertified) hired, trained and/or retained by "MARYHAVEN" consistent with the duty of care owed to individuals in the special needs community such as DAINELL SIMMONS. Rather, "MARYHAVEN" employed individuals who had neither the license, certification, recertification, education, experience, training, professionalism nor the skill to deal with non-verbal autistic adult in a group home setting in general and were

unfamiliar with the deceased and his history and "behavior plan"; "individualized education plan" or "self-control plan" of the deceased in particular.

7. Additionally, MARYHAVEN and its employees were responsible for pointing out and identifying DAINELL SIMMONS to the responding officers. MARYHAVEN employees failed to advise the police that they had the deceased under control and that their presence was not necessary. "MARYHAVEN" had an obligation and duty to diffuse the situation and to advise the police in advance of the same. "MARYHAVEN" should have recognized the danger of allowing the police to interact with the deceased, an autistic, non-verbal individual. The deceased had been calmly sitting on the couch when the police arrived and "MARYHAVEN" should not have allowed the interaction with the police knowing that the deceased did not require any psychiatric evaluation, was under constant medical care and supervision and that he was in fact not an "emotionally disturbed person" but rather, that he was autistic, and therefore, by forcibly arresting the deceased, and making him leave his home would be against standard operating procedure and treatment of autistic adults in a group home setting and would likely result in injury or death to the deceased.

8. PLAINTIFFS seek damages both compensatory and punitive, an award of costs, interest and attorney's fees, injunctive and equitable relief and such other relief as this Court may deem just and equitable.

## JURISDICTION

9.    The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

10.   This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

11.   Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to all state claims set forth in all counts.

12.   The rights, privileges and immunities sought herein to be redressed are those secured by the First, Fourth and Fifth Amendments and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against race discrimination and racial profiling based upon 42 U.S.C. §§ 1981 and 1983.

## VENUE

13.   Venue is proper within the Eastern District of this Court, County of Suffolk, State of New York, as the course of DEFENDANTS' conduct took place within the boundaries of the County of Suffolk, State of New York.

## PARTIES

14.   PLAINTIFF DAINELL ERIK SIMMONS was an African American male, who was a resident at MARYHAVEN CENTER OF HOPE (hereinafter referred to as "MARYHAVEN"), at the time of the excessive force, assault and battery and wrongful

false arrest, infliction of emotional distress, pain and suffering and wrongful death having been dealt electric shocks and pepper spray.

15.   DEFENDANT COUNTY OF SUFFOLK (hereinafter referred to as the "COUNTY") was, and still is, a corporation duly organized and existing under, and by virtue of, the laws of the State of New York, having its place of business within the Eastern District of the Federal District Court of New York, and included as its functions, the operation, management and finance of the COUNTY OF SUFFOLK POLICE DEPARTMENT

16.   DEFENDANTS POLICE OFFICERS "JOHN DOE" 1-10 were, and upon information and belief, still are, employed by DEFENDANT COUNTY in the SUFFOLK POLICE DEPARTMENT as Police Officers.  They are being sued in their individual and official capacities.

17.   DEFENDANTS MARYHAVEN CENTER OF HOPE FOR MENTALLY CHALLENGED INDIVIDUALS and EMPLOYEES "JOHN DOE" 1-10 (hereinafter referred to as "MARYHAVEN") was, and still is, a corporation duly organized and existing under, and by virtue of, the laws of the State of New York, having its place of business within the Eastern District of the Federal District Court of New York, having offices located at 51 Terryville Road, Port Jefferson Station, New York 11776.

## NOTICE OF CLAIM

18.   A Notice of Claim on behalf GLYNICE SIMMONS as Administrator of the Estate of DAINELL ERIK SIMMONS and GLYNICE SIMMONS individually pursuant to New York State law was timely served upon DEFENDANTS COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT on October 18, 2013. The COUNTY OF

SUFFOLK completed its General Municipal Law 50-h hearing of PLAINTIFF on February 4, 2014. More than 30 days have lapsed without the matter being resolved by the COUNTY OF SUFFOLK. The Notice of claim provided detailed information regarding the actions that the officers took during the incident with DAINELL ERIK SIMMONS at MARYHAVEN CENTER OF HOPE, the injuries and death that DAINELL ERIK SIMMONS sustained, and was sufficient to put the officers and the COUNTY OF SUFFOLK on notice of the conduct that they were alleged to have engaged in.

## FACTUAL BACKGROUND

19.  At all times relevant herein, PLAINTIFF DAINELL ERIK SIMMONS was a black-skinned African American male, born on April 28, 1984.

20.  Plaintiffs allege that they were caused to be injured due to the intentional acts, including, but not limited to, negligent hiring, retention and supervision of employees who were not trained in the crisis intervention team model also known as the "Memphis Method" for dealing with mentally challenged patients in order to recover for wrongful death, false imprisonment, excessive force, violation of civil rights under 42 U.S.C. §§1981, 1983 and 1986, racial profiling, assault and battery, intentional and negligent infliction of emotional distress, negligence, negligent hiring, negligent retention and negligent supervision, negligent training and use of police tactics, loss of services, affection, relationship and support as a result of  Defendants' COUNTY OF SUFFOLK, the SUFFOLK COUNTY POLICE DEPARTMENT and MARYHAVEN CENTER OF HOPE FOR MENTALLY CHALLENGED INDIVIDUALS actions.

21.   On or about July 24, 2013 the PLAINTIFF/decedent, DAINELL ERIK SIMMONS, was lawfully and properly present at premises of MARYHAVEN CENTER OF HOPE, COUNTY OF SUFFOLK. DAINELL SIMMONS has been a resident at "MARYHAVEN" for many years without any incident.  On occasion in the past if he was uncooperative, the staff had been instructed to involve DAINELL's mother, GLYNICE SIMMONS, by telephone so that she could speak to her son directly and no further intervention was necessary.  On July 24, 2013 the staff at "MARYHAVEN" failed to adhere to aforesaid protocol that had been in existence for a number of years and the personnel on duty that evening unjustifiably made a 911 call with inaccurate statements about DAINELL and his behavior.  This caused the SUFFOLK COUNTY POLICE, when they arrived at "MARYHAVEN", to arrest DAINELL as a result of the violation of duty of care by "MARYHAVEN" to use proper crisis intervention. The employees on duty were not hired, trained and/or retained consistent with the duty of care owed to individuals in the special needs community.

22.   On July 24, 2013, decedent DAINELL ERIK SIMMONS, a resident at MARYHAVEN CENTER OF HOPE in Middle Island, COUNTY OF SUFFOLK, State of New York, was tasered using stun guns, including the "dart type" gun, and pepper sprayed repeatedly by SUFFOLK COUNTY POLICE OFFICERS, causing extensive and severe physical injuries, pain and suffering, ultimately causing his death. By time the police arrived, DAINELL who is autistic, had completely calmed down and was sitting peacefully on a couch. The officers then unjustifiably handcuffed DAINELL, repeatedly tasered and peppered sprayed him, as well as used excessive force against him and assaulted and

battered him. As a result of the severe, extreme and lethal injuries inflicted upon him by the officers, DAINELL died.

23.  On or about July 24, 2013 the DEFENDANTS Police Officers John Does 1-10 were present and on duty in the vicinity of "MARYHAVEN CENTER OF HOPE", COUNTY OF SUFFOLK and State of New York, as part of their regular and official employment as a police officer for the DEFENDANT, COUNTY OF SUFFOLK.

24.  Commencing on July 24, 2013 the DEFENDANT officers deprived DAINELL ERIK SIMMONS of his rights, life and liberties as set forth in the Constitutions of the United States and of the State of New York.

25.  That on or about July 24, 2013 in violation of the rights, privileges and immunities guaranteed to him under the Fourteenth and Fourth Amendments to the United States Constitution and under the color of State law, the DEFENDANTS acted individually and in concert causing the PLAINTIFF to have been injured and damaged in an amount exceeding the jurisdictional limit of this Court to be determined upon the trial of this action.

26.  The injury and death of PLAINTIFF/decedent DAINELL ERIK SIMMONS was caused by all of the DEFENDANTS, their servants, agents and/or employees, without authority of law, or any reasonable cause or belief that deadly physical force was necessary.

27.  Although DEFENDANTS knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and/or employees, the defendant COUNTY OF SUFFOLK has not taken any steps or made any efforts to halt this course of conduct, to make redress to the PLAINTIFF or other citizens injured thereby, or to take any disciplinary action whatsoever against any of their employees or agents.  Such pattern

of conduct includes but is not limited by the prior death of Thomas Scimone in November 2010.

28.    That heretofore and prior to the commencement of this action the PLAINTIFF GLYNICE SIMMONS was appointed Administratrix of Estate of DAINELL ERIK SIMMONS, deceased by Order of the Suffolk County Surrogate Honorable Stephen L. Braslow dated October 9, 2013, and said plaintiff has duly qualified and is currently acting in such capacity.

29.    That by reason of the foregoing, this PLAINTIFF/decedent was severely injured and damaged, rendered sick, sore, lame and disabled sustained severe nervous shock and mental anguish, great physical pain and emotional upset, loss of enjoyment of life and wrongful death, all to PLAINTIFFS' great damage.

30.    That by reason of the foregoing, this PLAINTIFF/decedent was severely injured, damaged, and caused to sustain a wrongful death, all to PLAINTIFFS' great damage.

**AS AND FOR A FIRST CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1981 AGAINST ALL DEFENDANTS**

31.    The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "30" with the same  force and effect as  if fully set forth herein.

32.    Throughout the events recited herein, the individuals DEFENDANTS, while acting under the color of law, subjected the PLAINTIFF, DAINELL ERIK SIMMONS, a man of color and African-American race to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, and Civil Rights as guaranteed under Article I, Section II, of the New York State Constitution.

33.   PLAINTIFF has been deprived of his Constitutional Rights to be free of discrimination based upon race, color and racial profiling, and has been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions and ultimately death.

34.   The actions of DEFENDANTS, in depriving PLAINTIFF, of his Constitutional and Civil Rights, as hereinbefore stated, were willful and malicious acts.

35.   As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the amount of TWENTY MILLION ($20,000, 000.00) DOLLARS.

**AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL INDIVIDUAL DEFENDANTS**

36.   The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "35" with the same  force and effect as  if fully set forth herein.

37.   Each and all of the acts of the DEFENDANTS alleged herein were done by the DEFENDANTS, their agents, servants and/or employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, COUNTY OF SUFFOLK and under the authority of their office as police officers of said state and county.

38.   That at all times herein after mentioned, the DEFENDANT police officers were employed in their respective capacities by the DEFENDANT COUNTY OF SUFFOLK and were acting under the color of their official capacity as State actors and their acts were performed under the color of the policies, statutes, ordinances, rules and regulations of the COUNTY OF SUFFOLK.

39. The individual DEFENDANTS have embarked on a course of conduct that deprived PLAINTIFF of his rights under the United States Constitution, federal and state law.

40. The facts and circumstances cited above with references to the Constitution and other civil rights violations suffered by PLAINTIFF are examples of DEFENDANTS' violations of PLAINTIFF's civil rights.

41. DEFENDANT COUNTY OF SUFFOLK, and their employees POLICE OFFICERS "JOHN DOES" 1-10, in violation of 42 U.S.C. §1983 failed to properly regulate and promulgate appropriate and reasonable rules concerning officer's use of tasers including but not limited to defining when an officer may use a taser.

42. On July 24, 2013 PLAINTIFF/decedent DAINELL ERIK SIMMONS was unreasonably and excessively tasered using stun guns, including the "dart mode", and pepper sprayed and killed and thereby deprived of his rights, life, liberties and freedoms under color of State Law in violation of 42 U.S.C. §1983.

43. At all times relevant hereto, PLAINTIFF/decedent DAINELL ERIK SIMMONS was deprived of his right not to be subjected to use of excessive force by police that caused his loss of life guaranteed to him by the Fourth Amendment to the United States Constitution.

44. On or about July 24, 2013 in violation of the rights, privileges and immunities guaranteed to him under the Fourteenth Amendment to the United States Constitution and under color of State law, the defendant officers and each of them acting individually and in concert, in violation of 42 U.S.C. §1983, while on duty, detained the PLAINTIFF, even though the DEFENDANTS knew or should have known that the PLAINTIFF was wholly innocent.

45. The detainment and tasering of the PLAINTIFF, resulting in his death, was not justified by probable cause, self-defense, or other legal privilege.

46.   That the PLAINTIFF/decedent DAINELL ERIK SIMMONS did not commit any illegal act, either before or at the time he was improperly detained and tasered and killed, and deprived of his constitutional rights as set forth in the Constitution of the United States, particularly 42 U.S.C. §1983, and the Constitution of the State of New York.

47.   The actions of DEFENDANTS, acting under color of state and local law, custom and usage, have deprived PLAINTIFF of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of his rights to due process and equal protection under the First, Fourth, Fifth and Fourteenth Amendments.

48.   PLAINTIFF was unlawfully arrested, subjected to excessive force, denied medical treatment and imprisoned and killed by DEFENDANTS, without any cause or provocation whatsoever.

49.   The arrest, excess force, denial of medical treatment and imprisonment and wrongful death of PLAINTIFF was caused by DEFENDANTS without authority of the law and without any reasonable cause or belief that PLAINTIFF was a threat.

50.   The individual DEFENDANTS conspired together to violate PLAINTIFF's rights, in that the individual officers acted in concert to unlawfully violate PLAINTIFF's rights.

51.   The conduct and actions of the individual DEFENDANTS, acting under color of law, were done intentionally, maliciously and/or with reckless disregard of the natural and probable consequences of their acts, was done without lawful justification and was designed to and did cause specific pain and suffering, mental anguish, extreme emotional distress, humiliation and physical injury, pain and suffering and wrongful death and embarrassment in violation of PLAINTIFF's constitutional rights as guaranteed under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

52. Although DEFENDANTS knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and/or employees, the defendant COUNTY OF SUFFOLK has not taken any steps or made any efforts to halt this course of conduct, to make redress to the PLAINTIFF or other citizens injured thereby, or to take any disciplinary action whatsoever against any of their employees or agents. Such pattern of conduct includes but is not limited by the prior death of Thomas Scimone in November 2010.

53. The unlawful and illegal conduct of the DEFENDANTS, their agents, servants and/or employees and each of them, deprived PLAINTIFF/decedent of the following rights, privileges and immunities secured to him by the Constitution of the United States and of the State of New York: the right of PLAINTIFF not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States and the right not to be subjected to the use of excessive force by police that caused loss of life pursuant to the Fourth Amendment of the Constitution of the United States.

54. As a further result of the deprivation of PLAINTIFF DAINELL ERIK SIMMONS' right to be free from excessive force, and false arrest guaranteed to him by the Fourth and Fourteenth Amendment, and to enjoy free, equal treatment as guaranteed to him by the United States Constitution, he was caused to suffer injury, damage and wrongful death.

55. As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the sum of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion

of this litigation and punitive and exemplary damages in the amount of TEN MILLION ($10,000, 000.00), DOLLARS as against the individual DEFENDANTS.


**AS AND FOR A THIRD CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983 POLICY AND PRACTICE UNDER *MONELL V. DEPARTMENT OF SOCIAL SERVICES* AGAINST THE COUNTY DEFENDANTS**

56.     The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "55" with the same  force and effect as  if fully set forth herein.

57.     DEFENDANTS' violations of PLAINTIFFS' constitutional rights while acting under color of law resulted from COUNTY custom, policy and practice pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 n.58, 98 S.Ct 2037 n.58 (1978).

58.     DEFENDANT COUNTY failed to train its police officers and displayed a deliberate indifference to the constitutional rights to those within the State of New York, specifically to the special needs community members and dark-skinned young African American men.

59.     DEFENDANTS knew or should have known of the continued constitutional violations by its staff but repeatedly failed to make meaningful investigation into charges of constitutional violations by its staff against numerous citizens of color, in particular the special needs community member and young Black African American men.

60.     DEFENDANTS have deprived numerous citizens of color and African American race and of the special needs community before depriving PLAINTIFF of his civil, constitutional and statutory rights as a result of the unlawful and improper police practice and policy of racial profiling and are liable to PLAINTIFF under 42 U.S.C. § 1983.

61.     As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the amount of TWENTY MILLION

($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation and punitive and exemplary damages in the amount of TEN MILLION ($10,000, 000.00), DOLLARS as against the individual DEFENDANTS.


### AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO 42 USC § 1983 FOR RACIAL STEREOTYPING

62.   The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "61" with the same  force and effect as  if fully set forth herein.

63.   The individual DEFENDANTS have embarked on a course of conduct that deprived PLAINTIFF of his rights under the United States Constitution, federal and state law in retaliation for PLAINTIFF's alleged refusal to cooperate.

64.   The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by PLAINTIFF are examples of DEFENDANTS' violations of PLAINTIFF's civil rights.

65.   The actions of DEFENDANTS, acting under color of state and local law, custom and usage, have deprived PLAINTIFF of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of his rights to due process and equal protection under the 14th Amendment.

66.   PLAINTIFF was unlawfully detained and held against his will without cause. DEFENDANTS viewed PLAINTIFF, a young African American male, and wrongfully assumed that he was involved in a crime on stereotypical bias against young African American men.

67.   The conduct and actions of the individual DEFENDANTS, acting under color of law, was done intentionally, maliciously and/or with reckless disregard of the natural and probable

consequences of their acts and was done without lawful justification and was designed to and did cause specific pain and suffering, mental anguish, extreme emotional distress, humiliation and embarrassment and death in violation of PLAINTIFF's constitutional rights as guaranteed under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

68. **WHEREFORE**, as a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation and punitive and exemplary damages in the amount of TEN MILLION ($10,000, 000.00), DOLLARS as against the individual Defendants.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT COUNTY FOR NEGLIGENCE, NEGLIGENT HIRING, NEGLIGENT TRAINING, NEGLIGENT SUPERVISION AND NEGLIGENT RETENTION

69. The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "68" with the same  force and effect as  if fully set forth herein.

70. At all times relevant hereto, DEFENDANT COUNTY OF SUFFOLK had the duty to competently and sufficiently hire, train, retain and supervise within the Police Academy and at the Command, Precinct and Patrol levels, the defendant Officers in the protection of the Constitutional rights of the plaintiff under the First, Fourth, Fifth, and Fourteenth Amendment to the United States Constitution.

71. The DEFENDANTS exhibited a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of the DEFENDANTS.

72.   That the DEFENDANT COUNTY OF SUFFOLK, its agents, servants, and/or employees failed to hire, train, supervise, discipline or in any other way control the defendant officers in the exercise of their functions; that their failure to enforce the laws of the State of New York and the COUNTY OF SUFFOLK was and is carried out negligently, willfully, maliciously and with such reckless disregard for the consequences so as to display a conscious disregard for the dangers of harm and injury to citizens of the State and COUNTY OF SUFFOLK  including PLAINTIFF decedent herein.

73.   In addition, DEFENDANT, COUNTY OF SUFFOLK, had the duty to competently and sufficiently hire, train and retain within the Police Academy and at the Command, Precinct and Patrol levels, the defendant Officers to conform their conduct to a standard, established by law, for the protection of citizens, such as plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly, and/or negligently inflict injuries and death to citizens such as the PLAINTIFF herein.

74.   The DEFENDANT, COUNTY OF SUFFOLK, failed to competently and sufficiently hire, train, supervise and retain the DEFENDANT officers to confirm and conduct themselves to a statute established by law for the protection of citizens, such as PLAINTIFF, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries and death to citizens such as the plaintiff herein.

75.   The DEFENDANTS' failure to train and supervise as described above amounted to deliberate indifference to the Constitutional Rights of persons such as the PLAINTIFF.

76.   DEFENDANTS failed to implement and enforce appropriate supervision by and of its staff so as to prevent and remedy violations of citizens' Constitutional Rights.

77. DEFENDANTS failed to remedy the untrained unsupervised personnel and continued to retain them. As such, the defendants knew or should have known that the retention would result in violation of PLAINTIFF's Civil Rights.

78. DEFENDANTS, police officer John Does 1-10 failed to give a warning and/or gave an inappropriate warning under the circumstances to PLAINTIFF/decedent prior to using the taser.

79. DEFENDANTS, police officer John Does 1-10 failed to use their taser as "a last resort" against PLAINTIFF/decedent DAINELL ERIK SIMMONS.

80. That DEFENDANT police officers John Does 1-10 recklessly grossly negligently, carelessly, negligently and improperly used a taser on the PLAINTIFF/decedent DAINELL ERIK SIMMONS.

81. DEFENDANTS, police officers John Does 1-10 acted recklessly, grossly negligently, unreasonably, and departed from ordinary care in using a taser to PLAINTIFF/decedent who presented no threat of imminent death or serious physical injury to themselves or others.

82. The DEFENDANTS police officers John Does 1-10 acted recklessly, grossly, negligently, unreasonably and departed from ordinary care in using a taser on PLAINTIFF/decedent, who presented no threat of imminent death or serious physical injury to himself or to others.

83. As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
FOR ASSAULT AND BATTERY AND WRONGFUL DEATH**

84. The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "83" with the same force and effect as if fully set forth herein.

85. On or about July 24, 2013 PLAINTIFF was assaulted and battered by DEFENDANTS, sustaining severe physical injury at the hands of the individual DEFENDANTS resulting in his death; all at the hands of individual DEFENDANT POLICE OFFICERS JOHN DOES 1-10.

86. On or about July 24, 2013, PLAINTIFF DAINELL ERIK SIMMONS was assaulted and battered by DEFENDANTS, and as a direct and proximate result of being assaulted and battered, PLAINTIFF sustained severe and permanent injuries and death. Specifically, the stun guns used included tasers that were deployed the "dart mode". As explained in *Cockrell v. City of Cincinnati*, 468 Fed. App'x 491, 492 (6th Cir. 2012), tasers have two modes: "dart mode" and "drive-stun mode." In dart mode, a taser discharges metal probes that lodge in the skin of the target and deliver an electrical shock that overrides the target's central nervous system. In drive-stun mode, electrodes are pressed directly upon the target's body delivering a shock that, while painful, does not have the same incapacitating impact on the target's muscles and nervous system. *Id.*; *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011).

87. As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has damaged in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

88.   DEFENDANTS' extreme and outrageous conduct was the direct and proximate cause of severe and emotional distress to PLAINTIFF.

89.   As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF seeks punitive and exemplary in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS FOR FALSE ARREST, FALSE IMPRISONMENT AND EXCESSIVE FORCE**

90.   The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "89" with the same  force and effect as  if fully set forth herein.

91.   DEFENDANTS individually and/or jointly and in conspiracy, falsely arrest, falsely imprisoned and used unlawful excessive force upon PLAINTIFF.

92.   That the defendants intended to restrict PLAINTIFF's freedom of movement and that defendants did in fact restrict PLAINTIFF's freedom of movement.

93.   That PLAINTIFF's freedom of movement was directly restricted by the acts of the defendants by illegally stopping, detaining, investigating, arresting and confining PLAINTIFF without reasonable suspicion or probable cause.

94.   That PLAINTIFF was aware that his freedom of movement was restricted.

95.   That the individual Defendants are liable for their false arrest and false imprisonment of PLAINTIFF because said false arrest and false imprisonment was proximately caused by their unlawful actions as stated above.

96.    As a result of the wrongful acts of the Defendants in falsely arresting and falsely imprisoning PLAINTIFF, he suffered injuries and damages as stated above.

97. Defendants' conduct in using force upon PLAINTIFF for the purpose of causing him injury, and not as part of a good faith effort to maintain order or restore discipline, violated PLAINTIFF's rights.

98. PLAINTIFF/decedent DAINELL ERIK SIMMONS was unreasonably and excessively tasered with stun guns, including using the "dart mode", and pepper sprayed and killed.

99. DEFENDANTS, police officer John Does 1-10 failed to give a warning and/or gave an inappropriate warning under the circumstances to PLAINTIFF/decedent prior to using the taser.

100. DEFENDANTS, police officer John Does 1-10 failed to use their taser as "a last resort" against PLAINTIFF/decedent DAINELL ERIK SIMMONS.

101. That DEFENDANT police officers John Does 1-10 recklessly grossly negligently, carelessly, negligently and improperly used a taser on the PLAINTIFF/decedent DAINELL ERIK SIMMONS

102. DEFENDANTS, police officers John Does 1-10 acted recklessly, grossly negligently, unreasonably, and departed from ordinary care in using a taser to PLAINTIFF/decedent who presented no threat of imminent death or serious physical injury to themselves or others.

103. The DEFENDANTS police officers John Does 1-10 acted recklessly, grossly, negligently, unreasonably and departed from ordinary care in using a taser on PLAINTIFF/decedent, who presented no threat of imminent death or serious physical injury to himself or to others.

104. As a direct result of Defendants' use of excessive force, PLAINTIFF sustained injuries and damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1986**

105.    The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "104" with the same  force and effect as  if fully set forth herein.

106.    As set forth above, the DEFENDANTS, or any of them, having knowledge that the aforementioned violations of PLAINTIFF's rights were about to be committed, and having the power to prevent or aid in the prevention or commission of the same, neglected and refused to do so, and as a result such wrongful acts were committed and caused the PLAINTIFF to suffer injury and death in violation of 42 U.S.C. § 1986.

107.    As a result of the aforesaid wrongful, reckless and intentional acts of the DEFENDANTS, the PLAINTIFF has been damaged in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

108.    WHEREFORE, as a result of the individually named DEFENDANTS' violation of 42 U.S.C. § 1986, PLAINTIFFS were damaged in an amount of TWENTY MILLION ($20,000,000.00) DOLLARS and accordingly demand judgment in that amount.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST "MARYHAVEN" FOR NEGLIGENCE AND NEGLIGENT HIRING, RETENTION, SUPERVISION AND TRAINING OF  ITS  STAFF; INTENTIONAL INFLICTION OF EMOTIONAL  DISTRESS, WRONGFUL DEATH**

109.    The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "108" with the same  force and effect as  if fully set forth herein.

110.    "MARYHAVEN" holds itself out as a professional, licensed organization that specializes in the care of the autistic, mentally disabled and mentally retarded special needs

community, and specifically claims to provide specialized care in a group home setting for such individuals.

111.    Specifically, the employees at "MARYHAVEN" on the evening of July 24, 2013, owed a duty of professional care to the deceased to de-escalate the situation by any and all means before requesting police assistance. The parlance and protocol in the special needs community group home industry dictates that the individual have a specialized "individual education plan" and a "behavior plan", which the deceased did not have. Such standard operating procedures in the autistic group home setting include techniques designed to "match level of dangerousness", calming techniques, behavior modifications such as "wearing out", isolating the individual and specifically utilizing calming techniques of "self-control plan" that have been created and utilized for the individual in the past, which in the case of the deceased, specifically required phoning or summoning the deceased mother and having her speak to the deceased.

112.    At all times herein after mentioned, DEFENDANT, "MARYHAVEN", both directly and purposefully, and/or negligently instructed DEFENDANT, SUFFOLK COUNTY POLICE, on the evening of July 24, 2013, to take the PLAINTIFF decedent, DAINELL SIMMONS, into custody for a psychiatric examination.

113.    PLAINTIFF decedent had been a resident of "MARYHAVEN" for more than five years, and it should have been known to the staff that he was non-verbal and autistic. Accordingly, the staff should have contacted the psychiatric or mental health professionals who had previously worked with DAINELL SIMMONS. Likewise, on occasions in the past, if he was uncooperative, the staff had been instructed to involve DAINELL SIMMONS' mother, GLYNICE SIMMONS, by telephone so that she could speak to her

son directly and no further intervention was necessary. On July 24, 2013, the staff at "MARYHAVEN" deliberately and/or negligently failed to adhere to the aforesaid protocol that had been in existence for a number of years and the personnel on duty that evening unjustifiably made a 911 call with inaccurate statements about DAINELL SIMMONS and his behavior. This caused the SUFFOLK COUNTY POLICE, when they arrived at "MARYHAVEN", to arrest DAINELL SIMMONS and as a result the staff violated the duty of care allegedly subscribed to by "MARYHAVEN" in the proper use of crisis intervention to de-escalate the situation. "MARYHAVEN" failed to "match the level of dangerousness", failed to utilize "self-control plans", and either failed to have an IEP or failed to act upon it.

114.  Additionally, at the time the SUFFOLK COUNTY POLICE arrived, the decedent was "sitting peacefully on a couch" and could not be distinguished from other residents, but for being pointed out and identified by the staff of "MARYHAVEN". Further, the staff, agents, and/or employees of "MARYHAVEN" directed the police officers to arrest the PLAINTIFF and take him for a psychiatric evaluation.

115.  Further, "MARYHAVEN" employees failed to advise the police that they had the deceased under control and that their presence was not necessary. "MARYHAVEN" had an obligation and duty to diffuse the situation and to advise the police in advance of the same. "MARYHAVEN" should have recognized the danger of allowing the police to interact with the deceased, an autistic, non-verbal individual. The deceased had been calmly sitting on the couch when the police arrived and "MARYHAVEN" should not have allowed the interaction with the police knowing that the deceased did not require any psychiatric evaluation, was under constant medical care and supervision and that he was in

fact not an "emotionally disturbed person" but rather, that he was autistic, and therefore, by forcibly arresting the deceased, and making him leave his home would be against standard operating procedure and treatment of autistic adults in a group home setting and would likely result in injury or death to the deceased.

116.   Likewise, it is alleged that the employees on duty were not professional, licensed, certified (recertified) hired, trained and/or retained by "MARYHAVEN" consistent with the duty of care owed to individuals in the special needs community such as DAINELL SIMMONS. Rather, "MARYHAVEN" employed individuals who had neither the license, certification, recertification, education, experience, training, professionalism nor the skill to deal with non-verbal autistic adult in a group home setting in general and were unfamiliar with the deceased and his history and "behavior plan"; "individualized education plan" or "self-control plan" of the deceased in particular. The parlance and protocol in the special needs community group home industry dictates that the individual have a specialized "individual education plan" and a "behavior plan", which the deceased did not have. Such standard operating procedures in the autistic group home setting include techniques designed to "match level of dangerousness", calming techniques, behavior modifications such as "wearing out", isolating the individual and specifically utilizing techniques of a "self-control plan" that have been created and utilized for the individual in the past, which in the case of the deceased, specifically required phoning or summoning the deceased's mother and having her speak to the deceased. Rather, "MARYHAVEN" employed individuals who had neither the education, experience, training, professionalism nor the skill to deal with a non-verbal, autistic adult in a group home setting in general, were unfamiliar with the deceased and his history and "behavior

plan", "individualized education plan", and/or "self-control plan" of the deceased in particular".

117.    "MARYHAVEN" EMPLOYEES "JOHN DOE" 1-10 failed to act to protect the decedent and proceeded to endanger his life, resulting in his wrongful death when they failed to utilize the "individual education plan", "behavior plan", calming techniques, and "self-control plan" in failing to "match the level of dangerousness", rather than summoning the police on the first instance, in failing to report to the police that the deceased and the situation was under control, in failing to diffuse the situation once the police arrived, and in exacerbating the situation by not advising the police of the fact that the deceased was a non-verbal autistic adult who had never been violent and who had calmed down and that such an individual would likely be incapable of understanding any police presence in his home, nor even less, police commands and police escalation of force for failure to comply.

118.    The staff at "MARYHAVEN" and EMPLOYEES "JOHN DOE" 1-10  acted grossly negligent, recklessly, unreasonably, and further departed from ordinary care in directing and acquiescing in the arrest and use by the SUFFOLK COUNTY POLICE of a taser on the PLAINTIFF/decedent, who presented no threat of imminent death or serious physical injury to himself or to others. The "MARYHAVEN" staff failed to advise police that the deceased was non-verbal and mildly retarded and incapable of understanding police commands. Further, the "MARYHAVEN" staff failed to advise the SUFFOLK COUNTY POLICE that the shouting of commands or use of any force will likely escalate and exacerbate the autistic individual such as the decedent.

119.    **WHEREFORE**, as a result of the aforesaid wrongful, reckless, intentional, and/or negligent and/or grossly negligent acts of the DEFENDANT "MARYHAVEN", the

PLAINTIFF has been damaged in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS and attorneys and expert fees in an amount to be ascertained at the conclusions of this litigation and punitive and exemplary damages in the amount of TEN MILLION ($10,000,000.00) DOLLARS as against the individual DEFENDANTS.

### AS AND FOR A TENTH CAUSE OF ACTION AGAINST "MARYHAVEN" PURSUANT TO §§ 1983 AND 1986 AND AGAINST ALL INDIVIDUAL SERVANTS, AGENTS AND EMPLOYEES

120.   The PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "119" with the same  force and effect as  if fully set forth herein.

121.   DEFENDANTS "MARYHAVEN" and its staff, agents, and/or employees, embarked on a course of conduct that deprived PLAINTIFF, DAINELL SIMMONS, of his rights under the United States Constitution, Federal and State law, in violation of 42 U.S.C. §§ 1983 and 1986. "MARYHAVEN" employees failed to act to protect the decedent and proceeded to endanger his life resulting in his wrongful death when they purposefully and intentionally failed to utilize the "individual education plan", behavior plan", calming techniques, and "self-control plan", in failing to "match the level of dangerousness", and in summoning the police on the first instance, in failing to report to the police that the deceased and the situation was under control, in failing to diffuse the situation once the police arrived and in exacerbating the situation by not advising the police of the fact that the deceased was a non-verbal, autistic adult who had never been violent and who had calmed down, and that such an individual would likely be incapable of understanding any police presence in his home, nor even less, police commands and police escalation of force for failure to comply.

122.    The actions of the "MARYHAVEN" DEFENDANTS who acted in concert with the SUFFOLK COUNTY POLICE while jointly acting under the color of the state and local law, custom and usage, have deprived the PLAINTIFF, DAINELL SIMMONS of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of his rights to be free of Search and Seizure, excessive force, and to be treated with equal protections and due process under the Fourth and Fourteenth Amendment.

123.    DEFENDANTS "MARYHAVEN" and its staff, agents, and/or employees by and through their actions, conspired and/or engaged in a "joint activity" with the COUNTY Defendants. The acts of MARYHAVEN and its staff, agents, and/or employees were inextricably "entwined" with the acts of SUFFOLK COUNTY POLICE DEPARTMENT sufficient to render MARYHAVEN a "willful participant" in the COUNTY Defendants actions.

124.    By these actions, DEFENDANT'S, "MARYHAVEN" employees, agents, and servants, have jointly and separately deprived the PLAINTIFF of his rights under the First, Fourth, and Fourteenth amendments to the United States Constitution, in violation of 42 USC §§ 1983 and 1986.

125.    As a direct and proximate result of the foregoing, the PLAINTIFF sustained physical injury and damage consisting of loss of liberty, legal expense, shock, fright, and emotional distress all to his damage, for which DEFENDANTS "MARYHAVEN", the SUFFOLK COUNTY POLICE, and their collective agents, servants, and employees while working in conjunction with the SUFFOLK COUNTY POLICE DEPARTMENT were responsible.

126.    Throughout the events recited herein, the individual agents, servants, and employees of
        "MARYHAVEN", while acting in conjunction with the SUFFOLK COUNTY POLICE,
        under the color of law, subjected the PLAINTIFF, DAINELL ERIK SIMMONS,  a man
        of color and African-American race to the deprivation of rights, privileges and immunities
        secured by the Constitution and laws of the United States, and specifically the Equal
        Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution,
        and Civil Rights as guaranteed under Article I, Section II, of the New York State
        Constitution.

127.    Further, "MARYHAVEN" employees deliberately, intentionally, and maliciously failed to
        advise the police that they had the deceased under control and that their presence was not
        necessary. "MARYHAVEN" had an obligation and duty to diffuse the situation and to
        advise the police in advance of the same. "MARYHAVEN" should have recognized the
        danger of allowing the police to interact with the deceased, an autistic, non-verbal
        individual. The deceased had been calmly sitting on the couch when the police arrived and
        "MARYHAVEN" should not have allowed the interaction with the police knowing that
        the deceased did not require any psychiatric evaluation, was under constant medical care
        and supervision that he was in fact not an "emotionally disturbed person",  but rather,
        autistic, and that forcibly arresting the deceased and making him leave his home was
        against the standard operating procedure and treatment of autistic adults in a group home
        setting and would likely result in injury or death to the deceased. Further, they
        deliberately, intentionally, and maliciously failed to advise the police that the deceased
        was non-verbal and mildly retarded and incapable of understanding police commands.

128.   PLAINTIFF has been deprived of his Constitutional Rights to be free of discrimination based upon race, color, and racial profiling, and has been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions, and ultimately death.

129.   The actions of the DEFENDANTS, in depriving the PLAINTIFF, of his Constitutional and Civil Rights, as hereinbefore stated, were willful and malicious acts.

130.    WHEREFORE, as a result of "MARYHAVEN" and the SUFFOLK COUNTY POLICE and the individually named defendants' violation of 42 U.S.C. § 1983, PLAINTIFFS were damaged in an amount of TWENTY MILLION ($20,000,000.00) DOLLARS and accordingly demand judgment in that amount, and in all causes of action for Reasonable Attorneys' Fees, Expert Fees, Pre-Judgment interest, costs of this action and for such other relief as this Court may deem just and proper.

## JURY TRIAL

131.   PLAINTIFFS request a jury trial on all questions of fact.

Dated:  Lake Success, New York
         August 26, 2014

**CRONIN & BYCZEK, LLP**

By:

Linda M. Cronin, Esq.  (LC0766)
*Attorneys for Plaintiff*
1983 Marcus Avenue, Suite C-120
Lake Success, New York 11042
(516) 358-1700