UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
GLYNICE SIMMONS, individually and as Administratrix
of the Estate of DAINELL ERIK SIMMONS,

                                        Plaintiffs,

                                                                        14-cv-3884 (JS)(ARL)

            -against-

THE COUNTY OF SUFFOLK AND SUFFOLK
COUNTY POLICE DEPARTMENT, POLICE
OFFICERS "JOHN DOE" 1-10 individually and officially
as members of the Suffolk County Police Department,
MARYHAVEN CENTER OF HOPE FOR MENTALLY
CHALLENGED INDIVIDUALS, and EMPLOYEES
"JOHN DOE" 1-10,

                                        Defendants.

-----------------------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## MARYHAVEN DEFENDANTS' MOTION TO DISMISS


                                    **CRONIN & BYCZEK, LLP**
                                    *Attorneys for Plaintiffs*
                                    1983 Marcus Avenue, Suite C-120
                                    Lake Success, New York 11042
                                    (516) 358-1700
                                    mbobker@cblawyers.net
                        By:  Moshe C. Bobker (MB1090)


Dated: Lake Success, New York
            October 27, 2014

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

STANDARDS ON A MOTION TO DISMISS .................................................... 2

ARGUMENT ....................................................................................................... 6

**POINT I**   PLAINTIFFS HAVE ADDUCED SUFFICIENT FACTS
FROM WHICH CAN BE PLAUSIBLY INFERRED THAT
MARYHAVEN WAS A STATE ACTOR.................................. 6

**POINT II**   PLAINTIFFS HAVE STATED A CAUSE OF ACTION
AGAINST MARYHAVEN.......................................................... 10

    A.  §1981 ................................................................................ 10
    B.  §1983 ................................................................................ 11
    C.  §1986 ................................................................................ 12
    D.  Assault, Battery, and False Imprisonment...................... 13
    E.  Infliction of Emotional Distress..................................... 14
    F.  Negligence, Negligent Hiring, Negligent Training,
       Negligent Supervision, and Negligent Retention ......... 16

**POINT III**   THIS COURT HAS SUPPLEMENTAL JURISDICTION
OVER PLAINTIFFS' STATE LAW CLAIMS EVEN IF
PLAINTIFFS' FEDERAL CLAIMS AGAINST
MARYHAVEN ARE DISMISSED ............................................. 18

CONCLUSION.................................................................................................... 22

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>                                                          <u>page</u>

<u>Federal</u>

Adickes v. Kress Co.,

     398 U.S. 144 (1970) ..................................................................... 6-7

Albert v. Carovano,

     851 F.2d 561 (2d Cir. 1988) ...........................................................10

Arista Records, LLC v. Doe 3,

     604 F.3d 110 (2d Cir. 2010) .............................................................4

Ashcroft v. Iqbal,

     556 U.S. 662 (2009)...................................................................... 2-4

Baylis v. Marriott,

     843 F.2d 658 (2d Cir. 1988) ...........................................................20

Bell Atl. Corp. v. Twombly,

     550 U.S. 544 (2007)...................................................................... 2-4

Bishop v. Toys "R" US, LLC,

     2009 WL 440434 (S.D.N.Y. Feb. 19, 2009)...................................11

Blum v. Yaretsky,

     457 U.S. 991 (1982)........................................................................6

Bologna v. Allstate Ins. Co.,

     138 F. Supp. 2d 310 (E.D.N.Y. 2001) ...........................................10

Boykin v. KeyCorp,

     521 F.3d 202 (2d Cir. 2008) .............................................................4

Branum v. Clark,

    927 F.2d 698 (2d Cir. 1991) ............................................................5

Briscoe v. LaHue,

    460 U.S. 325 (1983)...........................................................................7

Brown v. City of Oneonta,

    221 F.3d 329 (2d Cir. 2000) ..........................................................10

Burnette v. Carothers,

    192 F.3d 52 (2d Cir. 1999) ..............................................................4

Burton v. Wilmington Parking Auth.,

    365 U.S. 715 (1961) .........................................................................7

Cohn v. Keyspan Corp.,

    713 F. Supp. 2d 143 (E.D.N.Y. 2010) .............................................4

Conley v. Gibson,

    355 U.S. 41 (1957)....................................................................... 2-5

Dennis v. Sparks,

    449 U.S. 24 (1980)............................................................................6

Elektra Entm't Group, Inc. v. Santangelo,

    2005 U.S. Dist. LEXIS 30388 (S.D.N.Y. Nov. 28, 2005).............13

Erickson v. Pardus,

    551 U.S. 89 (2007)............................................................................3

Escalera v. New York City Hous. Auth.,

    425 F.2d 853 (2d Cir. 1970) ............................................................5

Exxon Mobil Corp. v. Allapattah Serv. Inc.,

    545 U.S. 546 (2005)................................................................. 19-20

Finley v. United States,

    490 U.S. 545 (1989)........................................................................20

Forziano v. Indep. Grp. Home Living Program, Inc.,

    2014 WL 1277912 (E.D.N.Y. Mar. 26, 2014).................................7

Ginsberg v. Healey Car & Truck Leasing, Inc.,

    189 F.3d 268 (2d Cir. 1999) ...........................................................7

Graham v. Henderson,

    89 F.3d 75 (2d Cir. 1996) ..............................................................12

Green Hills (USA) v. Aaron Streit, Inc.,

    361 F. Supp. 2d 81 (E.D.N.Y. 2005)..............................................20

Greenblatt v. Delta Plumbing Heating Corp.,

    68 F.3d 561 (2d Cir. 1995)..............................................................20

Griffin v. Breckenridge,

    403 U.S. 88 (1971)..........................................................................12

Henry v. Champlain Enterprises,

    288 F. Supp. 2d 202 (N.D.N.Y. 2003) ...........................................20

Hernandez v. Coughlin,

    18 F.3d 133 (2d Cir. 1994) ..............................................................5

Holmes v. New York City Hous. Auth.,

    398 F.2d 262 (2d Cir. 1968) ............................................................5

Iqbal v. Hasty,

    490 F.3d 143 (2d Cir. 2007) ............................................................3

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,

    140 F.3d 442 (2d Cir. 1998) ..........................................................20

IUE AFL-CIO Pension Fund v. Herrmann,

    9 F.3d 1049 (2d Cir. 1993) .............................................................4

Jones v. J.C. Penney's Dep't Stores, Inc.,

    2007 WL 1577758 (W.D.N.Y. May 31, 2007)............................11

King v. American Airlines, Inc.,

    284 F.3d 352 (2d Cir. 2002) ...........................................................4

Kirschner v. Klemons,

    225 F.3d 227 (2d Cir. 2000).........................................................19

Krynicky v. Univ. of Pittsburgh,

    742 F.2d 94 (3d Cir. 1984) .............................................................7

LeBlanc-Sternberg v. Fletcher,

    67 F.3d 412 (2d Cir. 1995) ...........................................................12

Lugar v. Edmondson Oil Co.,

    457 U.S. 922 (1982).........................................................................7

Lujan v. Nat'l Wildlife Fed'n,

    497 U.S. 871 (1990)..................................................................... 3-4

Mark v. Borough of Harboro,

    51 F.3d 1137 (3d Cir. 1995) ....................................................... 6-7

McKeesport Hosp. v. Accreditation Council for Graduate Med. Ed.,

    24 F.3d 519 (3d Cir. 1994) ....................................................6

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,

    7 F.3d 1085 (2d Cir. 1993) ...............................................10

Oladokun v. Ryan,

    2011 WL 4471882 (S.D.N.Y. Sept. 27, 2011) ......................... 20-21

Phillip v. Univ. of Rochester,

    316 F.3d 291 (2d Cir. 2003) ..............................................11

Pierre v. J.C. Penney Co.,

    340 F. Supp. 2d 308 (E.D.N.Y. 2004) .............................................11

Ross v. Bank of America, N.A. (USA),

    524 F.3d 217 (2d Cir. 2008) ................................................3

Runyon v. McCrary,

    427 U.S. 160 (1976)....................................................10

Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.,

    40 F.3d 247 (7th Cir. 1994) ................................................2

Savino v. City of New York,

    331 F.3d 63 (2d Cir. 2003) ................................................12

Shechter v. Comptroller of City of N.Y.,

    79 F.3d 265 (2d Cir. 1996) ................................................5

Sheuer v. Rhodes,

    416 U.S. 232 (1974)....................................................5

Smith v. City of New York,

      950 F. Supp. 55 (E.D.N.Y. 1996)...................................................20

Somin v. Total Community Management Corp.,

      494 F. Supp. 2d 153 (E.D.N.Y. 2007)............................................19

S.W.B. New England, Inc. v. R.A.B. Food Group, LLC,

      2007 U.S. Dist. LEXIS 43401 (S.D.N.Y. June 13, 2007) .............13

Swierkiewicz v. Sorema N.A.,

      534 U.S. 506 (2002)...................................................................3, 18

Thomas v. Roach,

      165 F.3d 137 (2d Cir. 1999) ..........................................................12

Traggis v. St. Barbara's Greek Orthodox Church,

      851 F.2d 584 (2d Cir. 1988) ..........................................................12

Turkmen v. Ashcroft,

      589 F.3d 542 (2d Cir. 2009) ............................................................3

United States v. Rubin,

      844 F.2d 979 (2d Cir. 1988) ..........................................................13

Weisman v. LeLandais,

      532 F.2d 308 (2d Cir. 1976) ............................................................5

Williams v. Vincent,

      508 F.2d 541 (2d Cir. 1974) ............................................................5

Winokur v. Office of Court Admin.,

      190 F. Supp. 2d 444 (E.D.N.Y. 2002) ...........................................11

Wong v. Mangone,

    450 F. App'x 27 (2d Cir. 2011) ................................................. 10-11

Ziemba v. Wezner,

    366 F.3d 161 (2d Cir. 2004) ............................................................4


**State**

Akins v. Glens Falls City School Dist.,

    53 N.Y.2d 325 (1981) ....................................................................16

Bernstein v. East 51st Street Development Co., LLC,

    78 A.D.3d 590 (1st Dep't 2010) ....................................................15

BF v. WC,

    9 Misc. 3d 1123(A) (Sup. Ct., Rensselaer Cnty. 2005) .................16

Breytman v. Schechter,

    30 Misc. 3d 1219(A) (Sup. Ct., Kings Cnty. 2011) .......................15

Cotter v. Summit Sec. Servs., Inc.,

    14 A.D.3d 475 (2d Dep't 2005) ....................................................13

Di Ponzio v. Riordan,

    89 N.Y.2d 578 (1997) ....................................................................16

Fugazy v. Corbetta,

    34 A.D.3d 728 (2006) ....................................................................13

Higgins v. Hamilton,

    18 A.D.3d 436 (2d Dep't 2005) ....................................................14

Holland v. City of Poughkeepsie,

     90 A.D.3d 841 (2d Dep't 2011)......................................................14

Howell v. New York Post Co., Inc.,

     81 N.Y.2d 115 (1993)............................................................ 14-15

Jackson v. New York Univ. Downtown Hosp.,

     69 A.D.3d 801 (2d Dep't 2010)......................................................16

Karoon v. New York City Tr. Auth.,

     241 A.D.2d 323 (1st Dep't 1997)....................................................16

Kenneth R. v. Roman Catholic Diocese of Brooklyn,

     229 A.D.2d 159 (2d Dep't 1997)....................................................16

Marilyn S. v. Independent Group Home Living Program, Inc.,

     73 A.D. 3d 892 (2d Dep't 2010)...............................................13, 16

Martinez v. City of Schenectady,

     97 N.Y.2d 78 (2001)..................................................................14

Talavera v. Arbit,

     18 A.D.3d 738 (2d Dep't 2005)......................................................17

Watson v. Strack,

     5 A.D.3d 1067 (4th Dep't 2004).....................................................16

## STATUTES                                          page

28 U.S.C. §1367.................................................................. 18-21

42 U.S.C. §1981.................................................................. 2, 10-11

42 U.S.C. §1983.................................................................2, 6-7, 11-12

42 U.S.C. §1985 .................................................................. 2, 12-13

42 U.S.C. §1986.................................................................. 2, 12-13

## RULES                                             page

Fed. R. Civ. P. 8.................................................................2, 4

Fed. R. Civ. P. 9................................................................. 3-4

Fed. R. Civ. P. 12.................................................................2, 4

## PRELIMINARY STATEMENT

Plaintiffs Glynice Simmons, individually and as Administratrix of the Estate of Dainell Erik Simmons (hereinafter "Plaintiffs"), by and through their attorneys, Cronin & Byczek, LLP, respectfully submit the within Memorandum of Law in Opposition to Maryhaven Defendants' Motion to Dismiss. The action arises from the tragic death of Dainell Simmons on July 24, 2013. Dainell was a twenty-nine year old who suffered from severe autism, which rendered him non-verbal. Dainell was tased to death by Suffolk County Police Officers, following a call from Maryhaven staff. Plaintiffs allege that the intentional, reckless and/or negligent acts of both the County defendants and the Maryhaven defendants caused Dainell's untimely, and wholly-preventable, death.[1]

Plaintiffs commenced this action by filing a Complaint on June 23, 2014 which asserted causes of action against the County of Suffolk, the Suffolk County Police Department, and certain individual police officers employed by the County of Suffolk (together, the "County" defendants). The Complaint also asserted causes of action against Maryhaven Center of Hope for Mentally Challenged Individuals and certain individual employees of Maryhaven (together the "Maryhaven" defendants). The County defendants filed an answer on August 1, 2014. On August 5, 2014 Plaintiffs filed an Amended Complaint (Docket Entry No. 17). The Court granted Plaintiffs request for leave to file a Second Amended Complaint on consent of all parties on September 23, 2014. Plaintiff filed the Second Amended Complaint the following day (*see* Docket Entry No. 23). The Maryhaven defendants now move to dismiss the Second Amended Complaint ("Complaint") in its

---

[1] Plaintiffs' attorneys recently met with Assistant District Attorney Peter Timmons who informed us that the results of his investigation will be presented to a Grand Jury in or about the second week of November.

1

entirety.[2]

Plaintiff opposes Defendants' motion on the basis that: (1) the Complaint adduces sufficient facts from which can be plausibly inferred that Maryhaven was a "state actor" and can thus be liable under §1983; (2) Plaintiffs have alleged sufficient facts to sustain their causes of action against Maryhaven; and (3) this Court has supplemental jurisdiction over Plaintiffs' state law claims even if Plaintiffs' federal claims against Maryhaven are dismissed.

Accordingly, Maryhaven defendants' motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

The Court is respectfully directed to the Second Amended Complaint for a complete and accurate statement of the facts.

## STANDARDS ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (quotation marks in original)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (quotes and ellipses in original)). "A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."

---

[2] The County Defendants filed an Answer to Plaintiffs' Second Amended Complaint as well and do not join the instant motion. See Docket Entry No. 25.

Twombly, 550 U.S. at 555 (*citing* Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (*citing* Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)).

The Supreme Court ruled that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation.'" Twombly, 550 U.S. at 569, n.14 (*quoting* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002) (quotation marks in original)).

Even assuming, *arguendo*, that Twombly and Iqbal create a heightened pleading standard, that standard is applied only in specific circumstances. Specifically, "Twombly and Iqbal require 'a heightened pleading standard in those contexts where factual amplification is needed to render a claim plausible.'" Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009) (*quoting* Ross v. Bank of America, N.A. (USA), 524 F.3d 217, 225 (2d Cir. 2008)); *accord* Iqbal v. Hasty, 490 F.3d at 157-58 ("the Court is…requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").

Also, cases following Twombly have demonstrated that the Supreme Court has not entirely abandoned the rationale of Conley. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'"

Erickson v. Pardus, 551 U.S. 89, 93 (2007) (*quoting* Twombly, 550 U.S. at 555 (*quoting* Conley, 335 U.S. at 47) (marks in original)). And, when reviewing the sufficiency of a complaint, "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990) (*citing* Conley, 335 U.S. at 45-46).

In fact, the Second Circuit has rejected the interpretation that Twombly and Iqbal imposed a heightened pleading standard. "[T]he notion that Twombly imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the Twombly opinion itself." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010). In support of this proposition the Court quoted the Conley language from Twombly. *See* Arista Records, LLC, 604 F.3d at 119.

The Second Circuit further held that the Twombly and Iqbal plausibility standard does not prevent a plaintiff in a civil action from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant. S*ee* Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008). "[T]he names and records, if any…is information particularly within [Defendant]'s knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances." Id. "[E]ven in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading 'special matters,' we have held that 'allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.'" Id. (*quoting* IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993) (quotes in original)); *accord* Cohn v. Keyspan Corp., 713 F. Supp. 2d 143, 159 (E.D.N.Y. 2010). "In deciding a Rule 12(c) motion [for judgment on the pleadings], we apply the same standard as that applicable to a motion under

Rule 12(b)(6) [for failure to state a claim], accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." King v. American Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002) (*citing* Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); *accord* Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). "[T]his standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation.'" Shechter v. Comptroller of City of N.Y., 79 F.3d 265, 270 (2d Cir. 1996) (*quoting* Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (quotation marks in original)).

Simply, the sentiment espoused in Escalera v. New York City Hous. Auth., 425 F.2d 853 (2d Cir. 1970), still rings true: "An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." *See also* Branum v. Clark, 927 F.2d 698 (2d Cir. 1991) (instructing courts not to dismiss "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (*quoting* Conley, 355 U.S. at 45-46); Holmes v. New York City Hous. Auth., 398 F.2d 262 (2d Cir. 1968); Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974); Hernandez v. Coughlin, 18 F.3d 133 (2d Cir. 1994). The Second Circuit has followed the test that "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Weisman v. LeLandais, 532 F.2d 308, 310-11 (2d Cir. 1976) (*quoting* Sheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In light of these strictures, Plaintiffs respectfully submit that the Maryhaven Defendants' motion must be denied in its entirety.

# ARGUMENT

## POINT I

### PLAINTIFFS HAVE ADDUCED SUFFICIENT FACTS FROM WHICH CAN BE PLAUSIBLY INFERRED THAT MARYHAVEN WAS A STATE ACTOR

While it is axiomatic that liability under §1983 is predicated upon "state action," it has been long-established that the "state actor" requirement does not require "that the accused be an officer of the State" but merely that the private party "is a willful participant in joint activity with the State or its agents." *See* Adickes v. Kress Co., 398 U.S. 144, 152 (1970) (holding that a private party involved in a conspiracy to violate the plaintiff's rights, even though not an official of the State, can be liable under § 1983). *See also* Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) ("As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.") (quotation marks in original).

The Supreme Court has delineated three ways to determine whether the "state action" requirement has been satisfied. "The first inquiry asks whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state." Mark v. Borough of Harboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (*quoting* Blum v. Yaretsky, 457 U.S. 991, 1004-05, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (internal quotation marks omitted)). "The second discrete inquiry asks whether the private party has acted with the help of or in concert with state officials." Id. (*quoting* McKeesport Hosp. v. Accreditation Council for Graduate Med. Ed., 24 F.3d 519, 524 (3d Cir. 1994) (internal quotation marks omitted)). "Finally, the third scenario involves situations in which the State has so far insinuated itself into a position of interdependence with the acting

6

party that it must be recognized as a joint participant in the challenged activity." Id. (*citing* Krynicky v. Univ. of Pittsburgh, 742 F.2d 94, 98 (3d Cir. 1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985) *quoting* Burton v. Wilmington Parking Auth., 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961) (internal marks omitted)).

The Court in Mark explained that in Adickes, the Supreme Court held that "a conspiracy between a private party and a state official to engage in unlawful discrimination constituted action 'under color' of law for purposes of the statute." Id. (*citing* Adickes at 152) (some marks omitted). And, the Supreme Court in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) held that "a private party's prejudgment attachment of another party's property, pursuant to a state statute, constituted state action under section 1983." Id. (*citing* Lugar, 57 U.S. at 941-42, 102 S.Ct. at 2756).

Initially, Plaintiffs note that, contrary to Maryhaven's assertion, Forziano v. Indep. Grp. Home Living Program, Inc., No. 13-cv-0370, 2014 WL 1277912 (E.D.N.Y. Mar. 26, 2014) does not stand for the proposition that Maryhaven, and institutions similar to it, can never be deemed a state actor. Indeed, the Court in Forziano plainly stated, "While it is clear that private entities, such as IGHL and Maryhaven, are not state actors, such entities can be liable for civil rights violations under Section 1983 if they have conspired, or engaged in joint activity, with state actors." Id. (*citing* Briscoe v. LaHue, 460 U.S. 325, 330 n.7 (1983); Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 271 (2d Cir. 1999)). As the Court in Lugar noted, the state actor inquiry is fact specific. *See* Lugar, 457 U.S. at 939. Relevantly, the facts of Forziano differ greatly from the facts herein, rendering Forziano anything but "controlling" law. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Maryhaven Memo of Law"), p. 7.

Another factor cutting against Defendants' motion as a whole is the fact that Dainell, by

7

reason of his death, was unable to personally provide the specific acts or omissions which form the basis of Maryhaven's liability. His death was caused by the intentional and/or negligent acts of the County Defendants and Maryhaven Defendants. Simply, the Maryhaven Defendants should not benefit from Dainell's death. Through research and other means, Plaintiffs uncovered the facts and culled them together for inclusion in the Complaint; of course, the factual allegations would have been enhanced and bolstered by Dainell's account of the occurrences of July 24, 2013. Dainell may have provided the specifics of the conversation between Maryhaven and the County which led to the police's response to the Maryhaven premises. The substance of that conversation and the specific statements made during the course of the call will indicate the extent of the agreement and conspiracy between the two groups of defendants. Unfortunately, Dainell is dead and thus unable to provide such details.[3] The allegations in the Complaint, now before the Court on Defendants' motion, sufficiently allege a conspiracy/concerted acts by Maryhaven and/or its employees with the County defendants which permit an inference that Maryhaven was a "state actor" for the purpose of the instant motion.

Plaintiffs' allege that, in addition to failing to adhere to past precedent and protocol with regard to Dainell, Maryhaven, through its agents and/or employees, also "unjustifiably made a 911 call with inaccurate statements about DAINELL SIMMONS and his behavior." Complaint ¶5. Following the call, the Maryhaven defendants "were responsible for pointing out and identifying DAINELL SIMMONS to the responding officers[,]" "failed to advise the police that they had the deceased under control and that their presence was not necessary[,]" failed "to diffuse the situation and to advise the police in advance of the same." Complaint ¶6.

---

[3] While it is true that Dainell was "non-verbal" due to his autism, it is entirely plausible that he could have provided such details through other means, such as by writing or gesturing in response to specific questions.

8

It was as a result of the unjustifiably made 911 call, and the statements made by Maryhaven therein, that the County defendants failed to use proper crisis intervention. Complaint ¶21. Plaintiffs plainly claim that Maryhaven "acted in concert with the SUFFOLK COUNTY POLICE while jointly acting under the color of the state and local law, custom and usage…." Complaint ¶122.

Further inference of a conspiracy or joint activity can, and for the purpose of this motion must, be induced from the County Defendants' claim that "defendants took plaintiff into custody pursuant to a citizen's arrest after identification, in accordance with statutory mandate." *See* Answer to Second Amended Complaint by County of Suffolk, Docket Entry No. 25, p. 8 (Thirteenth Affirmative Defense). The County's reference to a "citizen's arrest" necessarily implicates Maryhaven, as the County (and its agents or employees) would effectuate a "normal" arrest, as opposed to a citizen's arrest, as they are not mere citizens but a state entity. This claim, when read in conjunction with Plaintiffs' Complaint, provides a clear basis for holding Maryhaven to be a state actor based upon its conduct as alleged in the Complaint.

At the core, it is quite plausible that Maryhaven conspired and/or engaged in a joint activity with the County defendants. To support this contention, Plaintiffs allege that, aside from its failures for which it may be liable under state law, Maryhaven also engaged the County defendants by calling 911, despite there being no reason to do so. During that call, and following the officers' arrival, Maryhaven and its employees made inaccurate statements to the officers and caused the officers to unlawfully arrest Dainell, which led directly to Dainell's death. The specific statements made by Maryhaven and its employees are known only to the defendants at this time, and discovery is required to ascertain the exact contents thereof. Only then can this Court properly analyze whether, as a matter of law, Maryhaven may be considered a state actor in this instance.

9

**POINT II**

**PLAINTIFFS HAVE STATED A CAUSE OF ACTION AGAINST MARYHAVEN**

**A. §1981**

"Section 1981 provides a remedy against private actors who intentionally discriminate on the basis of race or ethnicity." Wong v. Mangone, 450 F. App'x 27 (2d Cir. 2011) (*quoting* Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) *citing* 42 U.S.C. § 1981; Runyon v. McCrary, 427 U.S. 160, 168-75, (1976); Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988) (internal quotes omitted)).

"To establish a claim under 42 U.S.C. 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000) (*citing* Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (*per curiam*)).

"Those enumerated activities include the rights to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." Id. (*quoting* 42 U.S.C. 1981(a) (internal quotation marks omitted)). The Second Circuit upheld a verdict in Plaintiff's favor under §1981 where he satisfied the "equal benefit" clause of § 1981, "namely, that he was deprived of the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Wong v. Mangone, 450 F. App'x 27 (2d Cir. 2011) (*quoting* 42 U.S.C. § 1981(a) (internal quotation marks omitted)).

Specifically, the Court noted: "In this Circuit, the equal benefit protections of §1981(a) do not require state action and may be asserted against private individuals, such as Mangone." Id.

10

(*citing* <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 294-95 (2d Cir. 2003)). "A § 1981 violation may occur when a private individual injures the security of persons and property in violation of a state law, and does so with a racially discriminatory purpose." <u>Id</u>. (*citing* <u>Pierre v. J.C. Penney Co.</u>, 340 F. Supp. 2d 308, 313 (E.D.N.Y. 2004); <u>Bishop v. Toys "R" US, LLC</u>, No. 04-cv-9403, 2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009); <u>Jones v. J.C. Penney's Dep't Stores, Inc.</u>, No. 03-CV-920A, 2007 WL 1577758, at *18 (W.D.N.Y. May 31, 2007), *aff'd*, 317 F. App'x 71 (2d Cir. 2009)).

Plaintiffs state a cause of action under §1981. The Complaint alleges that Dainell was an African-American male, establishing that he was the member of a racial minority. Complaint ¶19. Further, assault and battery, unlawful detention, false imprisonment, and false arrest each violate New York State laws which are clearly intended for the security of persons. *See* <u>Wong</u>, *supra* ("Wong adduced evidence sufficient to permit a reasonable fact-finder to find that Mangone violated New York State laws prohibiting assault and battery, which are "clearly intended for the 'security of persons.'") (marks in original). And, the Complaint alleges that Dainell was singled-out because of his status as a black male.

**B.  §1983**

"Section 1983 has three essential elements: (1) a person; (2) acting under color of state law; and (3) infringement upon a plaintiff's constitutional or federal statutory rights." <u>Winokur v. Office of Court Admin.</u>, 190 F. Supp. 2d 444, 453 (E.D.N.Y. 2002) (*citing* <u>Eagleston v. Guido</u>, 41 F.3d 865, 872 (2d Cir. 1994)).

It is clear that the individual Maryhaven defendants fit within the meaning of "person." *See* <u>id</u>. And, as discussed in full in Point I above, the Maryhaven may be held liable under §1983

as they were "a willful participant in joint activity with the State or its agents," in this case the County defendants. Even the County defendants claim that Maryhaven helped effectuate Dainell's arrest, as can be seen from their Thirteenth Affirmative Defense, wherein they state that Dainell was subjected to a civilian's arrest. Finally, there is no doubt that Plaintiffs' "constitutional or federal statutory rights" include the right to be free from unlawful search and seizure, false imprisonment and arrest. *See e.g.*, Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (holding that violations of the Fourth Amendment, such as malicious prosecution and false arrest, give rise to liability under §1983).

Dainell's rights were certainly severely violated in this case. And, there is no question that the violations were directly caused by Maryhaven's conduct, in conjunction with that of the County defendants. Thus, Maryhaven may be held liable for said conduct pursuant to §1983.

## C.  §1986

"Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under Section(s) 1985." Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996). And, a violation of §1985 requires "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (*citing* Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988); Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

Plus, a conspiracy "need not be shown by proof of an explicit agreement but can be

12

established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" Id. (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988) (quotation marks in original)).

Although the Complaint does not specifically mention §1985, it is clear from the language therein, as well as the fact that Plaintiffs allege a §1986 conspiracy, that such a claim is the basis for Plaintiffs' §1986 claim. And, the "argument that plaintiff has not "come forward with specific facts" in support of its claim, but instead relies upon "speculation and innuendo," is inapposite." See S.W.B. New England, Inc. v. R.A.B. Food Group, LLC, No. 06 Civ. 15357(GEL), 2007 U.S. Dist. LEXIS 43401, at *11 (S.D.N.Y. June 13, 2007) (quotes in original; brackets omitted). "The uncovering of 'specific facts' is the goal of discovery - generally, a party is neither expected nor required to state the 'specific facts' of its claims in its pleadings." Id. See also Elektra Entm't Group, Inc. v. Santangelo, No. 05 Civ. 2414(CM), 2005 U.S. Dist. LEXIS 30388, at *3 (S.D.N.Y. Nov. 28, 2005).

As discussed in more detail above, there is no doubt that the intentional conduct of Maryhaven and its employees differed from the norm in this case. They purposefully brought the police, with their tasers, pepper spray, and handcuffs, to a home for "developmentally disabled" individuals. They could have prevented Dainell's torment and ultimate death, a certain violation of §1985, and are therefore liable under §1986.


### D.  Assault, Battery, and False Imprisonment

"To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact...." Marilyn S. v. Independent Group Home Living Program, Inc., 73 A.D. 3d 892, 894 (2d Dep't 2010) (citing Fugazy v. Corbetta, 34 A.D.3d 728, 729 (2006), Cotter v. Summit Sec. Servs., Inc., 14

A.D.3d 475, 475 (2d Dep't 2005)).

"To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, i.e., wrongful under all of the circumstances, and intent to make the contact without the plaintiff's consent…." Holland v. City of Poughkeepsie, 90 A.D.3d 841 (2d Dep't 2011) (quoting Higgins v. Hamilton, 18 A.D.3d 436, 436 (2d Dep't 2005)).

And, a claim for false imprisonment requires that "the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged." Martinez v. City of Schenectady, 97 N.Y.2d 78, 85 (2001).

When the allegations in the Complaint are accepted as true, especially in addition to the County's assertion that Dainell was "taken into custody pursuant to a civilian arrest," it is clear that Plaintiffs' claims for assault, battery and false imprisonment must survive. The Maryhaven defendants certainly made "bodily contact" with Dainell, which contact was offensive, when they restrained and arrested him. He was also certainly aware of the imminent battery, thus permitting recovery for assault as well. And, Maryhaven's unlawful restraint and/or arrest of Dainell undeniably meets the requirements for false imprisonment.

Therefore, Plaintiffs' claims for assault, battery, and false imprisonment against Maryhaven must survive.

### E.  Infliction of Emotional Distress

The tort of intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993).

A claim for negligent infliction of emotional distress "no longer requires physical injury as a necessary element" and "generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety…." Breytman v. Schechter, 30 Misc. 3d 1219(A) (Sup. Ct., Kings Cnty. 2011) (quoting Bernstein v. East 51st Street Development Co., LLC, 78 A.D.3d 590, 591 (1st Dep't 2010)).

In this case, Plaintiffs allege that Maryhaven intentionally summoned the police, despite that Dainell was sitting calmly and quietly on the couch. Upon the officers' arrival, the Maryhaven defendants pointed-out Dainell to them. Maryhaven further failed to have appropriate staffing (such as a properly trained, certified and/or licensed employees) and those present failed to follow the normal course of conduct – which including calling Dainell's mother, Glynice, who would always calm him down. The police never had to be summoned when said protocol was followed. Perhaps most egregiously, the staff even failed to inform the officers that Dainell was autistic and non-verbal. All of the foregoing acts and omissions, led directly to Dainell's death by tasering.

Surely, a home such as Maryhaven, which "cares for the developmentally disabled[,]" see Maryhaven Memo of Law, p. 6, is required to ensure the safety and security of its residents. Maryhaven owed a duty to its residents to prevent infliction of harm or injury, regardless of the cause, since the residents are "developmentally disabled" and cannot fully-care for themselves. However, instead of carrying out that duty, Maryhaven caused and conspired with the officers to have Dainell arrested and tased. Maryhaven, intentionally and negligently caused an autistic and non-verbal young man to be assaulted, battered, arrested, pepper sprayed, and tased repeatedly until he died. Dainell was certainly within the "zone of danger" as he was pepper sprayed and

tasered to death. And, such conduct surely goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993). What decent and civilized society would permit individuals entrusted with the well-being of the developmentally disabled to (at the very least) negligently cause their charge to be pepper sprayed and sit idly-by while he is tased to death?

### F. Negligence, Negligent Hiring, Negligent Training, Negligent Supervision, and Negligent Retention

"The elements of a cause of action for negligence are (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof[.]" BF v. WC, 9 Misc. 3d 1123(A) (Sup. Ct., Rensselaer Cnty. 2005) (quoting Akins v. Glens Falls City School Dist., 53 N.Y.2d 325, 333 (1981) (internal quotation marks omitted)).

"The extent of a defendant's duty is…dependent upon whether the relationship of the parties is such as to give rise to a duty of care, whether the plaintiff was within the zone of foreseeable harm, and whether the occurrence causing injury was within the reasonably foreseeable risks[.]" Id. (citing Di Ponzio v. Riordan, 89 N.Y.2d 578, 583 (1997) (internal pagination omitted)).

"To establish a cause of action based on negligent hiring and supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury[.]" Marilyn S. v. Independent Group Home Living Program, Inc., 73 A.D. 3d 892, 894 (2d Dep't 2010) (citing Jackson v. New York Univ. Downtown Hosp., 69 A.D.3d 801, 801 (2d Dep't 2010), Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 161 (2d Dep't 1997)).

"Generally, where an employee is acting within the scope of his or her employment, the

16

employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training...." Talavera v. Arbit, 18 A.D.3d 738, 738 (2d Dep't 2005) (citations omitted). However, an exception to this general rule exists where the employer was grossly negligent and the plaintiff seeks punitive damages, as is the case herein. *See* id. at 738-739 (*citing* Watson v. Strack, 5 A.D.3d 1067 (4th Dep't 2004); Karoon v. New York City Tr. Auth., 241 A.D.2d 323 (1st Dep't 1997)).

Here, the conduct by Maryhaven was certainly negligent. Plaintiffs assert that the conduct was in fact grossly negligent and thus Plaintiffs may recover for the negligent hiring, training, retention and supervision of its employees. It is beyond simple negligence for a "group home" for developmentally disabled individuals not to hire, train, retain and supervise employees who are adequately licensed, trained and certified to do same. Simply, any appropriate training, supervision etcetera would have ensured that the staff on-call was prepared to handle a situation akin to the one that arose. It is gross negligence on the part of Maryhaven for its staff not to know how to handle such situations, what the proper protocol for Dainell was (calling his mother who, without fail, calmed him), and certainly to inform the police that he was autistic and non-verbal. Moreover, the staff even requested that the police forcibly arrest Dainell for the purpose of taking him for a psychiatric evaluation, despite that they were well-aware of his psychiatric condition, as his psychiatric condition was the very reason he was placed in their care. *See* Complaint ¶¶112-114. Surely, staff hired, supervised and trained to any degree could have, and would have, prevented Dainell's death.

Maryhaven's argument in support of its motion revolves around its assertion that it was under no duty to implement a "behavior plan," "individualized education plan," or "self-control

plan" and therefore cannot be held liable. *See* Maryhaven Memo of Law, p. 18. However, this argument fails for several reasons. First, Maryhaven cannot assert facts contrary to those enumerated in the Complaint to support its motion to dismiss. *See, e.g.*, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, n. 1 (2002). Secondly, it cannot be reasonably argued that Maryhaven, which agreed to house and care for Dainell, was not under a duty to protect him and ensure his safety. Third, Plaintiffs clearly allege that Maryhaven undertook to and actually implemented a protocol or course of action individualized for Dainell – i.e. a "behavior plan" or "self-control plan." Even assuming, *arguendo*, that Maryhaven did not owe a duty prior to implementing said plan, it assumed the duty once it did so. There can be no doubt that Plaintiffs' claim for negligence on the part of Maryhaven and its agents and/or employees is sufficiently stated.

In sum, Maryhaven owed a duty to Dainell. They were entrusted with his well-being and were required to protect him from harm. They severely breached that duty and Dainell died as a result.

## POINT III

### THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS EVEN IF PLAINTIFFS' FEDERAL CLAIMS AGAINST MARYHAVEN ARE DISMISSED

Maryhaven incorrectly asserts that "Once the federal causes of action are dismissed, the Court is <u>divested</u> of federal jurisdiction over Maryhaven…[.]" *See* Maryhaven Memo of Law, Point IV (emphasis added). In support of this contention, Maryhaven supplies an inaccurate reading and interpretation of 28 U.S.C. §1367(a) and cites to several cases which are all inapplicable to the instant action. The law clearly dictates that in such circumstances a district court may exercise supplemental jurisdiction over pendent state law claims (and perhaps is even <u>required</u> to do so).

There are several glaring errors in Maryhaven's contention. Firstly, Maryhaven's reading of

§1367 fails to account for the fact that federal claims still exist in this action, even if the Court were to dismiss Plaintiff's federal claims against Maryhaven, by virtue of Plaintiffs' claims against the County (which has chosen to answer and not move to dismiss).[4] Simply, while §1367 of course requires this Court to have original jurisdiction in order to exercise supplemental jurisdiction, this Court undeniably has original jurisdiction over Plaintiffs' federal claims against the County, permitting the Court to properly exercise supplemental jurisdiction over Plaintiffs' state law claims, including those against Maryhaven. Maryhaven does not even suggest that Plaintiffs' claims against each group of defendants are not "part of the same case or controversy," nor could they in good faith. Clearly, both the County defendants and the Maryhaven defendants played parts in the events leading up to Dainell Simmons' tragic demise. The particular roles each played should be determined in one proceeding, as they certainly overlap.

Moreover, the cases cited by Maryhaven in support of its proposition are all distinct for one all-important reason: in those cases <u>all</u> the federal claims alleged against <u>all</u> parties had already been dismissed, leaving <u>only</u> state claims remaining. In contrast, federal claims still exist in this action regardless of the Court's decision with regard to Maryhaven. Maryhaven's own interpretation of the case law undermines their contention. Maryhaven states, "where the district court has dismissed before trial the <u>only</u> basis for federal jurisdiction, the court should decline to exercise supplemental jurisdiction over the pendent state law claims." Maryhaven Memo of Law, p. 15 (emphasis added) (*citing* <u>Somin v. Total Community Management Corp.</u>, 494 F. Supp. 2d 153 (E.D.N.Y. 2007)). All of Plaintiffs' federal claims are not even before the Court on the instant motion; as such it is impossible for "the only basis" for federal jurisdiction to be dismissed herein.

The Court does not have to accept Plaintiffs' word that Maryhaven's contention is meritless;

---

[4] *See* Docket Entries No. 14, 25.

the Supreme Court and Second Circuit (as well as Courts in this district and other districts within the circuit) have already rendered it so. A cursory reading of the Supreme Court's opinion in Exxon Mobil Corp. v. Allapattah Serv. Inc., 545 U.S. 546 (2005) demonstrates that §1367(a)'s "broad grant of supplemental jurisdiction" includes the facts of this case.[5] *See* id.

Furthermore, the Second Circuit has held: "We have previously observed that 28 U.S.C. § 1367(a) responds to the Supreme Court's decision in Finley v. United States, 490 U.S. 545 (1989) and thereby makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party." Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000) (*citing* Greenblatt v. Delta Plumbing Heating Corp., 68 F.3d 561, 576 (2d Cir. 1995)). *See also* Green Hills (USA) v. Aaron Streit, Inc., 361 F. Supp. 2d 81 (E.D.N.Y. 2005)[6]; Smith v. City of New York, 950 F. Supp. 55 (E.D.N.Y. 1996)[7]; Henry v. Champlain Enterprises, 288 F. Supp. 2d 202 (N.D.N.Y. 2003); Oladokun v. Ryan, No. 06-cv-2330, 2011 WL 4471882 (S.D.N.Y. Sept. 27, 2011) ("The plain language of the statute gives a district court discretion to decline to exercise jurisdiction only if it "has dismissed all claims

---

[5] While it is true that the Court's analysis in Allapattah was in the context of diversity jurisdiction, the Court's rationale was clear and applicable here. *See* id. ("Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction. The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties.").

[6] The Court there noted that following implementation of §1367 which restored pendent-party jurisdiction and effectively overruled Finley, "the Second Circuit has taken an expansive approach to deciding questions of the exercise of supplemental jurisdiction, provided that there is present within a given controversy a predicate basis of original jurisdiction." Id. (*citing* Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446-48 (2d Cir. 1998)).

[7] "Legal Aid argues that this claim [for legal malpractice] must be dismissed because it is a state law claim over which this Court lacks jurisdiction.... Legal Aid's argument fails since a party asserting a federal claim against one defendant may assert a related state claim against a different defendant. Baylis v. Marriott, 843 F.2d 658, 664 (2d Cir. 1988) (citing cases). Legal Aid does not provide any argument why the Court lacks pendent party jurisdiction over the state law claim against it." Id. at 58-59 (citation in original).

over which it has original jurisdiction."…This language appears to preclude the application of that discretion in a case when any claim arising under federal law remains, regardless of the identity of the party against whom the claim lies.) (*quoting* 28 U.S.C. § 1367(c)(3) (quotation marks in original)).

Maryhaven's interpretation of §1367 is clearly incorrect, and this Court may certainly exercise supplemental jurisdiction over Plaintiffs' state law claims, even assuming Plaintiffs' federal claims against Maryhaven were to be dismissed. Further, Maryhaven has not proffered any legal basis or rationale to persuade this Court to decline to exercise said authority.

In fact, courts in this Circuit have held that exercise of supplemental jurisdiction in such circumstances is <u>mandatory</u>. *See* <u>Oladokun</u>, 2011 WL 4471882 ("This interpretation is reinforced by the overall purpose of 28 U.S.C. § 1367, which confers <u>mandatory</u> supplemental jurisdiction over state law claims that "form part of the same case or controversy" as claims over which the district courts have original jurisdiction. The statute is designed to allow a case arising out of a common nucleus of operative facts to be tried in a single court, and expressly provides that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. 1367(a). Allowing some parties, against whom only state law claims lie, to be dismissed, while allowing other parties, against whom federal claims lie, to remain in federal court, would defeat the purpose of the <u>mandatory</u> conferral of supplemental jurisdiction for the joinder or intervention of additional parties, and, more generally, would leave cases with a common nucleus of operative facts split between federal and state courts.") (quotation marks and citations in original) (emphasis added)). The case at bar is analogous. As Maryhaven would have it, Plaintiffs would be forced to try its claims against the County defendants in federal court, while simultaneously prosecuting its state law claims against Maryhaven in state court. This is clearly untenable. As such,

this Court should properly exercise supplemental jurisdiction over Plaintiffs' pendent state law claims, even if all federal claims against Maryhaven are dismissed.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court deny Maryhaven defendants' motion to dismiss in its entirety.

Dated:  Lake Success, New York
        October 27, 2014

CRONIN & BYCZEK, LLP

By: _____
        Moshe C. Bobker (MB1090)
        *Attorneys for Plaintiffs*
        1983 Marcus Avenue, Suite C-120
        Lake Success, New York 11042
        (516) 358-1700

TO:    Bartlett, McDonough & Monoghan
       *Attorneys for Maryhaven Defendants*
       170 Old Country Road
       Mineola, New York 11501
       Attn: Anna Hock, Esq.


       Dennis M. Brown
       Suffolk County Attorney
       *Attorneys for County Defendants*
       H. Lee Dennison Building
       100 Veterans Memorial Hwy.
       Hauppauge, NY 11788
       Attn: Arlene Zwilling, Esq.