UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
GLYNICE SIMMONS, Individually and as
Administratrix of the Estate of
DAINELL ERIK SIMMONS,

                        Plaintiff,

                                         MEMORANDUM & ORDER
         -against-                       14-CV-3884(JS)(ARL)

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT, POLICE
OFFICERS JOHN DOE 1-10 individually
and officially as members of the
Suffolk County Police Department,
and MARYHAVEN CENTER OF HOPE FOR
MENTALLY CHALLENGED INDIVIDUALS
and EMPLOYEES JOHN DOE 1-10,

                        Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:          Anthony Michael Mahoney, Esq.
                        855 Grand Concourse
                        Bronx, NY

                        Moshe C. Bobker, Esq.
                        Linda Cronin, Esq.
                        Cronon & Byczek, LLP
                        1983 Marcuse Ave., Suite C120
                        New Hyde Park, NY 11042

For Moving              Anna I. Hock, Esq.
Defendant:              Robert Frank Elliot, Esq.
                        Bartlett, McDonough & Monaghan, LLP
                        170 Old County Road
                        Mineola, NY 11501

For Non-Moving          Arlene S. Zwilling, Esq.
Defendants:             Suffolk County Attorney's Office
                        H. Lee Dennison Building, 5th Floor
                        100 Veterans Memorial Highway
                        P.O. Box 6100
                        Hauppauge, NY 11711-0099

SEYBERT, District Judge:

Plaintiff Glynice Simmons ("Plaintiff" or "Simmons"), individually and as Administratrix of the Estate of Dainell Erik Simmons ("Dainell"), deceased, commenced this action on June 23, 2014, against defendants County of Suffolk, Suffolk County Police Department, Police Officers John Doe 1-10 individually and officially as members of the Suffolk County Police Department ("collectively the "County Defendants"), and Maryhaven Center of Hope for Mentally Challenged Individuals, and Employees John Doe 1-10 (collectively "Maryhaven"). Plaintiffs' Complaint alleges, inter alia, violations of Dainell's civil rights guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (See generally Sec. Am. Compl., Docket Entry 23.) Specifically, Plaintiffs bring claims against Maryhaven for, inter alia, negligence for the false arrest, false imprisonment, excessive force, negligence, negligent training, hiring, retention and supervision, personal injury, assault, battery, failure to render medical aid, abuse of process, civil conspiracy, invasion of privacy, racial profiling, intentional infliction of

emotional distress, and violations of Plaintiff's free speech, as well as claims pursuant 42 U.S.C. §§ 1981, 1983, and 1986. (Sec. Am. Compl., Docket Entry 23 ¶ 1.)

Presently before the Court is Maryhaven's motion to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim (Docket Entry 24). For the following reasons, Maryhaven's motion is GRANTED.

BACKGROUND[1]

This action arises from the death of Dainell, a twenty-nine year old African-American male with Autism. (Sec. Am. Compl. ¶¶ 14, 19, 22.) Dainell resided at a group home, operated by Maryhaven, an independent and private, not-for-profit Corporation affiliated with Catholic Health Services of Long Island, which serves the developmentally disabled community through a network of both habilitation and residential services. (Def.'s Br., Docket Entry 24-4, at 3.)

On July 24, 2013, Dainell exhibited uncooperative behavior. (Sec. Am. Compl. ¶ 21.) On past occasions when Dainell exhibited such behavior, the staff had been instructed to contact Dainell's mother so she could speak to her son. (Sec. Am. Compl. ¶ 21.) That night rather than contacting his mother, a Maryhaven employee called 911 and requested police

---

[1] The following facts are drawn from the Second Amended Complaint and are assumed true for the purpose of this Memorandum and Order.

3

assistance.  (Sec. Am. Compl. ¶¶ 21, 113.)  Plaintiff believes
that inaccurate statements were made during the call regarding
Dainell and his behavior.  (Sec. Am. Compl. ¶ 21.)  By the time
the Suffolk County Police Department responded to the call,
Dainell had calmed down and was sitting on the couch.  (Sec. Am.
Compl. ¶¶ 22, 114)  Yet, when police officers arrived, Maryhaven
staff pointed Dainell out and identified him to the officers
without trying to diffuse the situation or advising the officers
that Dainell was now calm.  (Sec. Am. Compl. ¶¶ 114-15.)  As a
result, officers handcuffed, tasered, pepper sprayed, and used
excessive force on Dainell, leading to his death.  (Sec. Am.
Compl. ¶ 22.)

Plaintiff alleges that Maryhaven had an obligation to
diffuse the situation and to advise the officers that Dainell
had calmed down.  (Sec. Am. Compl. ¶ 115.)  Plaintiff claims
that Maryhaven not only was negligent in its duty to care for
Dainell, but also in its training of its staff.  (Sec. Am.
Compl. ¶¶ 109-18.)  Plaintiff further asserts that Maryhaven
acted in concert with the County Defendants in depriving Dainell
of his constitutional rights, resulting in his death.  (Sec. Am.
Compl. ¶¶ 31-55, 62-68.)

Maryhaven argues for dismissal of the action because:
(1) Plaintiffs' 42 U.S.C. § 1983 claims cannot be maintained
because Maryhaven is neither a state actor nor engaged in

conduct under state law (Def.'s Br. at 5-11); (2) Plaintiffs' 42 U.S.C. § 1981 claim fails because Plaintiffs do not allege that the parties made or attempted to enforce a contract, therefore rendering the statute inapplicable (Def.'s Br. at 11-12); (3) Plaintiffs' 42 U.S.C. § 1986 claim cannot be maintained because Plaintiffs fail to allege a cause of action pursuant to 42 U.S.C. § 1985, which is a prerequisite for a § 1986 claim (Def.'s Br. at 12-14); and (4) Plaintiffs have failed to plead sufficient allegations to state a claim upon which relief can be granted with respect to the state law claims (Def.'s Br. at 14-15).

DISCUSSION

Before addressing the merits of Defendants' motion, the Court will discuss the applicable legal standard.

I.   Legal Standard

A.   Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949-50; <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.; <u>Harris</u>, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F. 3d 67, 71 (2d Cir. 1998). However, this limitation has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991).

## II.  <u>Plaintiff's Section 1983 Claims</u>[2]

---

[2] The Court notes that while Plaintiff's second cause of action pursuant to 42 U.S.C. § 1983 indicates that it is against all individual defendants, there are no allegations asserted against Maryhaven employees or references made to Maryhaven employees. (Sec. Am. Compl. ¶¶ 36-55.)  Accordingly, this claim is dismissed as to the Maryhaven defendants.

Plaintiff does not allege that Maryhaven is a government actor; rather, maintains that Maryhaven engaged in joint activity with the County Defendants, thus making them a state actor for the purposes of their § 1983 claim. (Pl.'s Br., Docket Entry 28, at 6-9.) Maryhaven argues that calling 911 and pointing out Dainell to the responding officers cannot support a § 1983 claim because the challenged conduct was not a state action. (Def.'s Br. at 5-11.)

> In pertinent part, § 1983 provides:
> Every person who, under color of . . . [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity . . . .

42 U.S.C. § 1983. A violation is proven when "a person or persons acting under color of state law deprived a plaintiff of rights, privileges, or immunities secured by the [C]onstitution or laws of the United States." McDarby v. Dinkins, 907 F.2d 1334, 1336 (2d Cir. 1990) (citation omitted). Plainly, a § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges secured by the Constitution or federal laws. Annis v. Cnty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).

The Supreme Court has recognized that a party acts under color of state law when he exercises power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk Cnty. v. Dodson, 454 U.S. 312, 317–18, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)); see also West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988). For purposes of a § 1983 action, a defendant necessarily "acts under color of state law when he abuses the position given to him by the State." Id. at 50, 108 S. Ct. 2255; see also Christian v. Belcher, 888 F.2d 410, 414 (6th Cir. 1989) ("[B]efore a defendant may be held liable under Section 1983, that defendant must first possess power by virtue of state law, then misuse that power in a way that violates federal constitutional rights." (emphasis in original)).

"'Private actors are not liable under section 1983 unless the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the State.'" Russell v. Aid to Developmentally Disabled, Inc., No. 12-CV-0389, 2013 WL 633573, at *18 (E.D.N.Y. Feb. 20, 2013) (quoting Omnipoint Commc'ns Inc. v. Comi, 233 F. Supp. 2d 388, 393 (N.D.N.Y. 2002) (in turn, quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482

(1982) (internal brackets omitted))). In this way, "'constitutional standards are invoked only when it can be said that the State is <u>responsible</u> for the specific conduct of which the plaintiff complains.'" <u>TZ Manor, LLC v. Daines</u>, 815 F. Supp. 2d 726, 738 (S.D.N.Y. 2011) (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004, 102 S. Ct. 2777, 2786, 73 L. Ed. 2d 534 (1982) (emphasis in original)). Of importance, "[t]he plaintiff 'bears the burden of proof to establish whether a private actor has acted under color of state law.'" <u>Russell</u>, 2013 WL 633573, at *18 (quoting <u>Omnipoint Commc'ns Inc.</u>, 233 F. Supp. 2d at 393).

In order to determine whether a private actor's conduct is fairly attributable to the State, courts turn to a number of tests, as follows:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2)[ ] the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test" or 'close nexus test'); or (3) [ ] the entity 'has been delegated a public function by the [s]tate,' ('the public function test').

<u>Sybalski v. Indep. Group Home Living Program, Inc.</u>, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (quoting <u>Brentwood Acad. v.</u>

Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296, 121 S.
Ct. 924, 930, 148 L. Ed. 2d 807 (2001)).

However, "[i]t is not enough [ ] for a plaintiff to
plead state involvement in 'some activity of the institution
alleged to have inflicted injury upon a plaintiff'; rather, the
plaintiff must allege that the state was involved 'with the
activity that caused the injury' giving rise to the action."
Id. at 257-58 (quoting Schlein v. Milford Hospital, 561 F.2d
427, 428 (2d Cir. 1977) (emphasis in original)); see also Grogan
v. Blooming Grove Volunteer Ambulance Corp., 917 F. Supp. 2d
283, 287-88 (S.D.N.Y.2013) ("Under any test, plaintiff must
establish that the state was involved in the specific activity
giving rise to her cause of action; it is not enough to show
merely that the state was involved in some aspect of the private
entity's affairs." (citation omitted)). Also, notably, "[t]he
determination of whether specific conduct constitutes state
action is a 'necessarily fact-bound inquiry.'" Cranley v.
Nat'l. Life Ins. Co., 318 F.3d 105, 111-12 (2d Cir. 2003)
(quoting Brentwood, 531 U.S. at 298, 121 S. Ct. at 932).

Under the "close nexus" or "joint action" test, "the
Court must determine whether there is a 'sufficiently close
nexus between the State and the challenged action of the private
entity so that the action of the latter may be fairly treated as
that of the State itself.'" Russell, 2013 WL 633573 at *19

10

(quoting Blum, 457 U.S. at 1004, 102 S. Ct. at 2786 (internal brackets omitted)).  In other words, "a private actor can be found 'to act under color of state law for 1983 purposes . . . if the private party is a willful participant in joint action with the State or its agents.'"  Anilao v. Spota, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980) (internal quotation marks omitted) (ellipsis in original)).

   "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law."  Id. (quoting Bang v. Utopia Restaurant, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)).  "[A] nexus of 'state action' exists between a private entity and the state when the state is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert or is entwined with governmental policies."  Colabella, 2011 WL 4532132, at *12 (quoting Flagg v. Yonkers Savs. and Loan Ass'n, FA, 396 F.3d 178, 187 (2d Cir. 2005) (in turn, quoting Cranley, 318 F.3d at 111 (internal brackets and ellipses omitted))).

   The first theory under which Plaintiff could demonstrate that the private party Defendant was a state actor

is to allege that it was a willful participant engaged in joint activity with the state or its agents. The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983. See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 271-72 (2d Cir. 1999) ("Healey's provision of background information to a police officer does not by itself make Healey a joint participant in state action under Section 1983 . . . [and] Officer Fitzgerald's active role in attempting to resolve the dispute after Healey requested police assistance in preventing further disturbance also does not, without more, establish that Healey acted under color of law."); see also Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [§ ] 1983 . . . . ."); Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978) (declining to hold "that the mere act of furnishing information to law enforcement officers constitutes 'joint (activity) with state officials'"); cf. Dahlberg v. Becker, 748 F.2d 85, 89-90, 93 (2d Cir. 1984) (holding that defendants' invocation of New York courts to issue a contempt order "does not constitute joint participation so as to satisfy

the statutory requirement under § 1983 that there be a state actor" (citation omitted)).  Similarly, if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor.  See Shapiro v. City of Glen Cove, 236 F. App'x 645, 647 (2d Cir. 2007) ("[N]o evidence supports Shapiro's contention that Weiss-Horvath acted jointly with the Glen Cove defendants to deprive her of her constitutional rights, and ample evidence shows that the Glen Cove officials who searched her house exercised independent judgment rather than acting at Weiss-Horvath's direction."); Butler, 589 F.2d at 327 (granting summary judgment to private defendant on § 1983 claim because defendant "did [nothing] more than supply information to police officers who then acted on their own initiative in arresting [plaintiff]"); Serbalik v. Gray, 27 F. Supp. 2d 127, 131-32 (N.D.N.Y. 1998) ("'[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority.'" (quoting Auster Oil & Gas Inc. v. Stream, 764 F.2d 381, 388 (5th Cir. 1985) (alteration in original))).  Furthermore, one's motivation is irrelevant to the determination of whether one is a state actor. Kash v. Honey, 38 F. App'x 73, 75-76 (2d Cir. 2002) (Concluding that there was no state action by a private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him,

including the purpose of penalizing plaintiff [ ] for exercising his First Amendment rights . . . falsely charged [plaintiff] in an accusatory instrument." (internal quotation marks and citation omitted) (ellipsis in original))); Shapiro v. City of Glen Cove, No. 03-CV-0280, 2005 WL 1076292, at *7 (E.D.N.Y. May 5, 2005) ("In any event, whatever motivation [defendant] may have had in calling in the complaint and alerting the media is irrelevant to the question of whether she was a state actor."). When the private actor takes a more active role, however, and jointly engages in action with state actors, he will be found to be a state actor. See, e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 942, 102 S. Ct. 2744, 2756, 73 L. Ed. 2d 482 (1982) (finding that, when a supplier sought prejudgment attachment of a debtor's property, that supplier was a state actor because it "invok[ed] the aid of state officials to take advantage of state-created attachment procedures"); Dennis v. Sparks, 449 U.S. 24, 27–28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980) (holding that defendants who conspired with and participated in bribery with federal judge acted under color of state law).

Alternatively, to demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an

overt act in furtherance of the goal. See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. See Ciambriello, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); see also Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (dismissing § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal quotation marks and citations omitted).

In the instant case, the Court concludes that Plaintiff's allegation of conspiracy and joint action between Maryhaven and the County Defendants are not sufficient to survive a motion to dismiss. Plaintiff alleges that Maryhaven called 911 and provided inaccurate statements and pointed Dainell out to the officers when they arrived. (Sec. Am. Compl. ¶¶ 21, 113-15.) As noted earlier, the court recognizes that merely summoning the police is not sufficient to cloak Maryhaven

with state action. "[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of a private party." Fisk, 401 F. Supp. 2d at 377 (citation omitted); see also Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1353 (7th Cir. 1985) (where no evidence of "concerted effort or plan" between a restaurant owner and police officer, owner was not a state actor simply because owner reported customers to officer and told officer where to find them, and customers were subsequently arrested by police officer); Benavidez, 722 F.2d at 618 ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983."); Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 405 (S.D.N.Y. 2004) (private party who calls for police assistance is not rendered a state actor under § 1983 even if the call caused plaintiff's detainment).

In short, Plaintiff has failed to allege that Maryhaven engaged in joint activity or a conspiracy with the County Defendants, thus failing to plead a plausible claim that Maryhaven was a state actor. Accordingly, Plaintiff's § 1983 claims are DISMISSED.

III. Plaintiff's Section 1981 Claim

Section 1981 of 42 U.S.C. establishes that all persons have equal rights to make and enforce contracts. 42 U.S.C. § 1981. To state a claim, a plaintiff must allege "(1) they are members of a racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned one or more activities enumerated in [ ] § 1981 . . . ." Shen v. A & P Food Stores, No. 93-CV-1184, 1995 WL 728416, at *2 (E.D.N.Y. Nov. 21, 1995). The first element has been modified so that a plaintiff need not be a member of a racial minority so long as the plaintiff has alleged an injury derivative of defendant's discriminatory actions against a racial minority. Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 700, (S.D.N.Y 1996), aff'd 125 F.3d 844 (2d Cir. 1997).

Plaintiff has failed to allege any facts suggesting that the parties entered into or at any time negotiated or requested a contract. Nor have they, or could they have, alleged an intent to discriminate on the basis of race in the performance of a contract as one did not exist between Plaintiff and Maryhaven. Accordingly, Plaintiff's § 1981 claim is subject to DISMISSED for failure to state a claim upon which relief can be granted.

IV. <u>Plaintiffs' Section 1986 Claim</u>

Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal quotation marks and citation omitted). "[A] § 1986 claim must be predicated upon a valid § 1985 claim." <u>Id.</u>

The Second Amended Complaint is devoid of any allegations pursuant to 42 U.S.C. § 1985. There can be no § 1986 claim in the absence of a § 1985 claim. Accordingly, because Plaintiffs have failed to allege a § 1985 claim, Plaintiffs' § 1986 is DISMISSED.

V. <u>State Law Claims</u>

A. <u>Assault & Battery Claim</u>

Plaintiff's sixth cause of action alleges common law assault and battery. To plead an assault, Plaintiff must allege "physical conduct placing the plaintiff in imminent apprehension of harmful contact." <u>Fugazy v. Corbetta</u>, 34 A.D.3d 728, 729, 825 N.Y.S.2d 120, 122 (2d Dep't 2006) (internal quotation marks and citation omitted). To plead battery, Plaintiff must allege "bodily contact, made with intent, and offensive in nature." <u>Id.</u> (internal quotation marks and citation omitted).

The Complaint is devoid of any allegations to support a claim of assault and battery against Maryhaven. In paragraph 85 of the Second Amended Complaint, Plaintiff asserts that the assault and battery occurred at "the hands of individual DEFENDANT POLICE OFFICERS JOHN DOES 1-10." (Sec. Am. Compl. ¶ 85.) Specifically, by a taser gun. (Sec. Am. Compl. ¶ 86.) Because the Complaint is silent as to any allegations that Maryhaven or its employees engaged in intentional bodily contact with Dainell, with a taser gun or without, Plaintiff's sixth cause of action for assault and battery as against Maryhaven is DISMISSED.

B. <u>False Arrest, False Imprisonment, and Excessive Force Claims</u>

Under New York Law, a plaintiff asserting a claim for false arrest must allege the following four elements: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995) quoting <u>Broughton v. State</u>, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87 (1975) (brackets in original). To prove false imprisonment under New York law, a plaintiff must show that "the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement

and did not consent to the confinement, and that the confinement was not otherwise privileged." Burgio v. Ince, 79 A.D.3d 1733, 913 N.Y.S.2d 864, 865, (4th Dep't 2010) (internal quotation marks and citation omitted).

As with the sixth cause of action for assault and battery, Plaintiff has once again failed to reference Maryhaven or its employees in any of the allegations in support of this cause of action. See Sec. Am. Compl. ¶¶ 90-104. Further, none of the allegations even suggest that Maryhaven subjected Dainell to a false arrest, false imprisonment or to the use of excessive force. Accordingly, the seventh cause of action for false arrest, false imprisonment, and excessive force is DISMISSED as against Maryhaven.

C. Ninth Cause of Action

Plaintiff's ninth cause of action includes two theories, a broad negligence theory and a claim for intentional infliction of emotional distress. The Court addresses each in turn.

1. Negligence

Plaintiff claime that Maryhaven was negligent because it failed to put in place a "behavior plan," "individualized education plan," or "self-control plan," and therefore breached its duty of care to Dainell resulting in his wrongful death. (Sec. Am. Compl. ¶¶ 110-18.) Maryhaven argues that because it

is an Individualized Residential Alternative ("IRA"), regulated by the Office for Persons with Disabilities, it's subject to the regulations set forth in 14 NYCRR Part 635, which do not require such a plan. (Def's Br. at 18.) The regulations do not require that IRAs create the plans in questions because such plans are regulated by the Department of Education, and intended for individuals with special needs that attend school. (Def.'s Br. at 18.)

Negligence is governed by New York state law, which requires a plaintiff to establish (1) that the defendant owed the plaintiff a cognizable duty of care; (2) that the defendant breached that duty, and (3) that the plaintiff suffered proximately caused damages. <u>King v. Crossland Sav. Bank</u>, 111 F.3d 251, 255 (2d Cir. 1997).

As this Court can find no regulation mandating that Maryhaven was to have provided Dainell with a "behavior plan," "individualized education plan," or self-control plan," the Plaintiffs have not satisfied the first element of a negligence claim because they did not breach a duty to Dainell. Accordingly, Plaintiffs' negligence claim fails.

### 2. <u>Negligent Hiring, Retention, Retention, Supervision and Training of its Staff</u>

Plaintiff alleges that the care provided by Maryhaven employees was grossly negligent because they did not know how to

handle Dainell's situation, failed to call his mother, failed to follow protocol, and failed to properly communicate with the police officers. (Sec. Am. Compl. ¶¶ 111-18.)

In New York, "a claim for negligent hiring, supervision or retention, in addition to the standard elements of negligence, requires a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." Biggs v. City of New York, No. 08-CV-8123, 2010 WL 4628360, at *9, (S.D.N.Y. Nov. 16, 2010) (internal quotation marks and citation omitted) (brackets in original).

"A claim for negligent hiring, retention, supervision and training is based on the employer's direct negligence." Saldana v. Vill. of Port Chester, No. 09-CV-6268, 2010 WL 6117083, at *5 (S.D.N.Y. July 10, 2010) (citation omitted). "Thus, an essential element of a cause of action in negligent hiring, retention, supervision, and training is that the employer knew or should have known of the employe[e]'s propensity for the conduct which caused the injury." Id. (internal quotation marks and citation omitted). Plaintiff has not alleged facts sufficient to infer that Maryhaven knew of the

propensity of any of their employees to cause the injury complained of. Accordingly, Maryhavens's motion to dismiss the claims for negligent hiring, retention, supervision, and training is granted.

### 3. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress is actionable in New York only for extremely egregious conduct. Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, (1983). Under New York law, a claim for intentional infliction of emotional distress requires a showing of "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (1993); see also Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999); Moore v. City of New York, 219 F. Supp. 2d 335, 338–39 (E.D.N.Y. 2002).

In order to state a valid intentional infliction of emotional distress claim, a plaintiff must meet a "rigorous, and difficult to satisfy" standard. Howell, 81 N.Y.2d at 121, 612 N.E.2d at 702; see also Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). To be considered extreme and outrageous, "conduct [must be] so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Howell, 81 N.Y.2d at 122, 612 N.E.2d at 702 (internal quotation marks and citations omitted). Whether conduct is sufficiently outrageous is decided a matter of law. Id.; see also Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010).

Lower courts in New York have sustained some claims for intentional infliction of emotional distress, but all of these cases included intentional acts "involv[ing] some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." Stuto, 164 F.3d at 820 (analyzing New York cases).

The conduct alleged in the Complaint fails to meet the extremely high threshold established under New York law for such a claim. The facts alleged by Plaintiff regarding Maryhaven, namely, calling 911 and pointing out Dainell to police officers upon their arrival, are not sufficiently egregious to state a claim for intentional infliction of emotional distress. It cannot be said that calling the police because a resident is being uncooperative is so "extreme in degree, as to go beyond all possible bounds of decency." Howell, 81 N.Y.2d at 122, 612

N.E.2d at 702. Accordingly, Maryhaven's motion to dismiss the ninth cause of action for intentional infliction of emotional distress is GRANTED.

VI. <u>Leave to Replead</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see</u> <u>also</u> Fed. R. Civ. P. 15(A)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." <u>Herbert v. Delta Airlines</u>, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)). Here, because Plaintiff's federal claims fail as a matter of law, amendment of such claims would be futile. Additionally, because this is Plaintiff's Second Amended Complaint and still have not successfully alleged a state law claim, any further opportunities to replead such claims would be futile.

CONCLUSION

For the foregoing reasons, Maryhaven's motion to dismiss (Docket Entry 24) is GRANTED in its entirety and all claims against the Maryhaven Defendants are DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to terminate

Maryhaven Center of Hope for Mentally Challenged Individuals, and Employees John Doe 1-10 as defendants in this action.

                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      September __30__, 2015
            Central Islip, New York