CUTI HECKER WANG LLP

305 Broadway, Suite 607
New York, NY 10007

Eric Hecker
212.620.2602 tel
212.620.2612 fax

ehecker@chwllp.com

July 25, 2017

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Simmons et al. v. County of Suffolk et al.*, 2:14-cv-03884-AMD-ARL

Dear Judge Donnelly:

    We write to request a pre-motion conference to discuss Plaintiffs' contemplated motion for partial summary judgment with respect to liability. We recognize that it is rare for a plaintiff to seek summary judgment in an excessive force case. We respectfully submit, however, that for the reasons that follow, Plaintiffs' claims are unusually strong, and Defendants have no viable defense.

Facts

    The following summarizes facts that are set forth more fully in the parties' accompanying Rule 56.1 Statement and Counter-Statement.

    Decedent Dainell Simmons was 29 years old at the time of his death in 2013. He suffered from severe autism and lived in a residential group home, the Maryhaven Center of Hope, in Middle Island, New York. On the date of the incident, Dainell became upset because he was not given a sweet that he wanted, and he became agitated to the point where the workers in the home felt compelled to call the police. At first, three Suffolk County police officers arrived. It is undisputed that when these three officers first arrived at the home, Dainell had calmed down and was seated quietly in the living room. It is undisputed that the officers did not consider Dainell to be a criminal subject, and that they merely wished to transport him to a psychiatric hospital for evaluation. When Dainell heard the officers discussing the need to take him into custody, he ran from the living room to the kitchen, dove on the floor on his stomach, and put his hands underneath his torso where the police could not reach them. It is undisputed that when Dainell was lying on the floor on his stomach, he was not a threat to anyone. The three officers nevertheless used force to try to handcuff him, contrary to their training and police department policy, which required them to deescalate the situation and maintain a significant distance from a subject with a mental impairment who was not a threat, and not to provoke a subject with autism.

The officers' decision to use force on Dainell when he was not a threat, contrary to their training and department policy, led to an escalating series of events that culminated in his asphyxiation. The officers initially were unable to handcuff him. They tased him numerous times. They pepper sprayed him. After tasing him and pepper spraying him, they were able to rear-cuff him. Predictably, Dainell remained agitated. By this time, several other officers had arrived at the scene. The officers decided that they needed leg shackles to restrain his legs. It took several minutes for an officer with leg shackles to arrive.

During this period, multiple officers held Dainell down in a prone or at least partially prone position, using their body weight to hold his head and torso down as they struggled to control his legs. This was directly contrary to their training and department policy, which is that placing weight on someone in a prone or partially prone position compresses the chest cavity, thereby creating a significant risk of asphyxia. The officers did this for several minutes until the leg restraints arrived and were applied. The officers then continued to hold him down in prone or partially prone position. Around one minute later, he went into cardiac arrest and died.

The Cause of Death

The Suffolk County Medial Examiner ruled Dainell's death a homicide. The cause of death was listed as "Sudden death during violent struggle including prone positioning and chest compression in a person with obesity and hypertensive cardiovascular disease." The ME confirmed at her deposition (notably, the County Attorney represents her) that prone positioning and chest compression caused Dainell to asphyxiate and was a substantial factor in his death. Plaintiff's expert pathologist, Dr. Michael Baden, concurs with that conclusion. So did the Suffolk County District Attorney, which presented the case to a grand jury as a homicide.

Dr. Wetli's Opinion

Undoubtedly aware that the medical evidence of asphyxia is overwhelming and devastating, the County retained Dr. Charles Wetli to opine that Simmons did not asphyxiate and in fact died of "natural causes." Respectfully, Dr. Wetli's purported opinion is ludicrous for numerous reasons. First, Dr. Wetli admits that, incredibly, *he consulted with this firm about this case* and tentatively concluded, based on his review of the ME's report, that Dainell died of compression asphyxia and asked us to send him a $3,500 retainer; and it was only after we declined to retain him and the County did that he conveniently reversed himself and concluded that compression asphyxia was completely impossible. Second, the centerpiece of Dr. Wetli's opinion is that Dainell cannot have asphyxiated because that would have required his chest "to be restricted to about 95% of normal for several minutes." Dr. Wetli admitted at his deposition that he got that "scientific"

threshold from a verbal conversation with a researcher who reported anecdotally that he had derived it *by placing weight on himself* until he neared passing out and had "extrapolated" to calculate the lethal threshold. We need not debate whether this "extrapolation" was based on a generally accepted methodology in satisfaction with *Daubert* because Dr. Wetli admits unequivocally that it was not. Finally, Dr. Wetli concedes that in the thousands of cases he has handled, he has never even heard of a case in which the ME ruled a case a homicide, the DA presented the case to a grand jury as a homicide, and the municipality then disavowed its own employees' conclusions in a transparent effort to escape civil liability.

Governing Legal Principles

It is irrelevant whether the officers intended to cause Dainell's death. The Supreme Court addressed and definitively resolved this issue in *Graham v. Connor*, 490 U.S. 386 (1989), and the Second Circuit recently reaffirmed this rule in a similar case in *Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016). Relying on *Graham* and its progeny, *Dancy* reaffirmed that intent is relevant to a Fourth Amendment excessive force claim only to the "limited extent" that a plaintiff "must prove that an officer intended to commit acts that constituted a seizure in the first instance." *Id.* at 116. "But as long as an officer deliberately performed acts that constitute a seizure, the Fourth Amendment has been triggered, regardless of whether it was accomplished by the exact method intended." *Id.* "Intent is not relevant . . . as to the officer's underlying motivation for his actions during the course of a seizure." *Id.* "An officer's good intentions are immaterial and will not justify an objectively unreasonable use of force." *Id.* at 117. The Court made clear that "in the excessive force context, the intent in question can only be the intent to perform some action, not that a particular result be achieved." *Id.* at 118. "So long as the plaintiff can point to unreasonable intentional action taken that proximately caused the injury after the seizure is initiated, no additional intent to injure is required." *Id.*

Nor are the officers entitled to qualified immunity. Many cases held, prior to July 24, 2013, that it was clearly established that it is objectively unreasonable for an officer to place body weight on a handcuffed subject in a prone position due to the significant risk of asphyxia. *See, e.g., Martin v. City of Broadview Heights*, 712 F.3d 951, 961-62 (6th Cir. Apr. 9, 2013); *Weigel v. Broad*, 544 F.3d 1143, 1154-55 (10th Cir. 2008); *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1061-62 (9th Cir. 2003); *Keeney v. City of New London*, 196 F. Supp. 2d 190, 200 (D. Conn. 2002).

Conclusion

There is no genuine issue of fact with respect to liability. Dainell asphyxiated. There was no basis to asphyxiate him or otherwise use lethal force. Defendants' intent is irrelevant. Defendants therefore are liable.

Respectfully submitted,

Eric Hecker

cc: All Counsel (via ECF)